NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-6292-11T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DANIEL A. BORJAS,

     Defendant-Appellant.

_____

> APPROVED FOR PUBLICATION
>
> **July 8, 2014**
>
> **APPELLATE DIVISION**

Argued April 29, 2014  -  Decided July 8, 2014

Before Judges Messano, Sabatino and Sumners.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 11-02-0314.

Karen Nazaire, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Ms. Nazaire, of counsel and on the brief).

Ian C. Kennedy, Deputy Attorney General, argued the cause for respondent (John J. Hoffman, Acting Attorney General, attorney; Kenneth A. Burden, Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

SABATINO, J.A.D.

This appeal concerns the constitutionality of certain provisions within N.J.S.A. 2C:21-2.1, a criminal statute that

enumerates various offenses involving false governmental documents. After a jury trial, defendant Daniel A. Borjas was found guilty of three counts of knowingly making false governmental documents, which are second-degree offenses proscribed by N.J.S.A. 2C:21-2.1(b). The jury also found defendant guilty of four counts of knowingly possessing false governmental documents, which are fourth-degree offenses proscribed by N.J.S.A. 2C:21-2.1(d). The false documents in question were created or stored in hard drives of computers at defendant's residence, and were discovered by law enforcement officers pursuant to a search warrant.

On appeal, defendant contends that these provisions in subsections (b) and (d) of N.J.S.A. 2C:21-2.1 are unconstitutional, both on their face and as applied to the circumstances in this case. Among other things, he claims that these statutes are void for vagueness, and also overbroad in that they allegedly disallow substantial amounts of constitutionally-protected expression. He further argues that he was deprived of a fair trial by the manner in which the trial judge defined the statutory term "document" for the jurors. Lastly, defendant claims that his flat custodial sentence of seventy-eight months is excessive.

For the reasons that follow, we sustain the trial court's rejection of defendant's constitutional challenges. The statutory provisions underlying his conviction are neither overbroad nor void for vagueness, either on their face or as applied to the facts in this case. We do not, however, foreclose future as-applied challenges to the statute by artists, students, or other persons who may use or store computer documents or images for benign purposes not designed to "falsely purport" that those documents or images are authentic governmental records.

We further conclude that the trial judge's instruction to the jury defining the meaning of the term "document" to encompass electronically-stored information was appropriate. We are also satisfied that defendant's sentence does not reflect any abuse of discretion. We therefore affirm his convictions and his sentence in all respects.

I.

The two portions of N.J.S.A. 2C:21-2.1 at issue in this case, specifically subsections (b) and (d), currently read as follows:

> b. A person who knowingly makes, or possesses devices or materials to make, a document or other writing which falsely purports to be a driver's license, birth certificate or other document issued by a governmental agency and which could be used

> as a means of verifying a person's identity
> or age or any other personal identifying
> information is guilty of a crime of the
> second degree.
>
> . . . .
>
> d. A person who knowingly possesses a
> document or other writing which falsely
> purports to be a driver's license, birth
> certificate or other document issued by a
> governmental agency and which could be used
> as a means of verifying a person's identity
> or age or any other personal identifying
> information is guilty of a crime of the
> fourth degree. . . .
>
> [N.J.S.A. 2C:21-2.1 (emphasis added).]

The indictment against defendant charging numerous violations of these false document provisions stemmed from a search of his apartment on April 16, 2009. That morning, several officers from the Bergen County Prosecutor's Office executed a search warrant at defendant's residence, initially on a belief that he had possessed or distributed child pornography. Pursuant to that warrant, the officers seized various electronic devices and other related items from the apartment. In particular, they recovered three computers, six hard drives, several DVDs, several CDs, a Blackberry phone, and an internet utility bill.

The seized hard drives contained computer files that included the following: (1) an image of a New Jersey driver's

license in the name of "L.C."[1] bearing a photograph of defendant; (2) an image of a New Jersey driver's license in the name of "M.P." bearing a photograph of defendant; (3) an image of a New Jersey driver's license in the name of "M.P." bearing a photograph of an unidentified individual; (4) an image of a Social Security card in the name of "L.C."; and (5) an image of a Social Security card in the name of "M.P." The officers also discovered a Microsoft Word document stored on the hard drive, which contained personal identifying information for M.P.

A Bergen County grand jury subsequently indicted defendant and charged him with second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(b)(5)(a) (Count One); fourth-degree possession of child pornography, N.J.S.A. 2C:24-4(b)(5)(b) (Count Two); second-degree knowingly making, or knowingly possessing materials or devices[2] to make, a false government document, N.J.S.A. 2C:21-2.1(b) (Counts Three, Four, Five, and Six); and fourth-degree knowingly possessing a false government document, N.J.S.A. 2C:21-2.1(d) (Counts Seven, Eight, Nine, and

---

[1] To protect the privacy of L.C. and M.P., we use initials for their names. Because L.C. was never located by the State, it is unclear whether he is an actual person.

[2] The State amended the indictment before trial to omit from Counts Three through Six the allegations that defendant illegally possessed "devices or materials to make" false governmental documents.

Ten).   Counts One and Two concerning the child-related allegations were dismissed before trial.

Several days prior to trial, the court denied defendant's motion to dismiss the indictment based on claims of unconstitutionality and insufficiency of the evidence.  The judge issued an oral opinion, concluding that the indictment was supported by sufficient prima facie evidence, including proof that the images and files stored on defendant's computer comprised incriminating "documents" within the meaning of the statute.  The judge also implicitly rejected defendant's claims of unconstitutionality.

At the two-day jury trial in February 2012, the State presented four witnesses:  Detective Kelly Krenn from the Bergen County Prosecutor's Office, who was one of the officers who executed the search warrant of defendant's apartment; Daniel Andriulli, a forensic analyst; Sharon Malone, a detective lieutenant from the Prosecutor's Office computer crimes unit; and M.P., one of the two persons identified on the files that the officers found in defendant's computer.  Defendant did not testify, nor did he call any witnesses on his behalf.

Detective Krenn described in her testimony the search of defendant's apartment and the officers' seizure of the electronic devices.  The seized items were secured in Krenn's

patrol car, and were then later handed over to Lieutenant Malone. Krenn acknowledged on cross-examination that the officers had not seized from defendant's apartment any printers, laminating machines, driver's licenses in physical form, or Social Security cards.

Andriulli, the State's forensic witness, described the contents of the seized computer hardware and software. He explained that the computer from which the files had been found only contained one user account, which belonged to defendant. He stated that the computer image files were found on the computer's Windows desktop, in a file folder labeled "Adobe Photoshop CS 8.0."[3] Information retrieved from those computer files indicated that they had been created on March 6, 2006, and that, before the seizure, one of the files was last accessed on December 25, 2006.

Andriulli explained that the computer files appeared to be altered because the images contained a different color behind the text than the color behind the spots without text. In his experience, such color differences signified that portions of the image were not part of the original image. On cross-examination, Andriulli acknowledged that he had not seen any physical printouts of the images found on defendant's computer.

_____

[3] Adobe Photoshop is a type of image editing software.

Malone testified about her efforts in identifying L.C. and M.P., the two persons who had been referred to in defendant's computer files. Malone was able to locate M.P., but could not find or verify the existence of an individual named L.C. Malone also noted that defendant's driving privileges had been suspended from March through October 2006, and again from November through December 2006.

Finally, the State called M.P. to the stand, who verified his current address and Social Security number. His identifying information matched the information for him shown in defendant's stored images.

The jury found defendant guilty on Counts Three, Five, Six, Seven, Eight, Nine, and Ten, but not guilty on Count Four. At sentencing, the trial judge imposed a flat seventy-eight-month custodial term concurrently on Counts Three, Five, and Six. In addition, the judge imposed a six-month term on each of defendant's convictions on Counts Seven through Ten, to be served concurrently with each other, and with the convictions on the other counts.

In his brief on appeal, defendant mainly contends that N.J.S.A. 2C:21.2.1(b) and (d) are unconstitutional on their face, and as applied to him in these factual circumstances. He specifically raises the following points for our consideration:

POINT I

<u>N.J.S.A.</u> 2C:21-2.1 IS OVERBROAD, IMPERMISSIBLY VAGUE, AND FACIALLY UNCONSTITUTIONAL. THEREFORE, [DEFENDANT'S] CONVICTIONS MUST BE VACATED.

    A. <u>N.J.S.A.</u> 2C:21-2.1 Is Unconstitutionally Vague Because It Fails To Provide Adequate Notice Of Prohibited Conduct And Likewise Fails To Provide The State With Guidelines For Enforcement, Leading To Arbitrary Results.

    B. <u>N.J.S.A.</u> 2C:21-2.1 Is Unconstitutionally Overbroad Because It Unnecessarily And Impermissibly Restricts Protected Speech By Failing To Include A Specific Intent Requirement.

POINT II

THE TRIAL COURT'S INSTRUCTIONS TO THE JURY ON THE DEFINITION OF A "DOCUMENT" DIRECTED THE JURY'S VERDICT ON AN ESSENTIAL ELEMENT OF THE CRIME AND THUS DENIED DEFENDANT THE RIGHT TO TRIAL BY JURY AND DUE PROCESS OF LAW. <u>U.S. CONST.</u>, AMEND. V, VI AND XIV, <u>N.J. CONST.</u> (1947), ART[.] 1, PAR. 1.

POINT III

THE SENTENCE IMPOSED WAS EXCESSIVE, UNDULY PUNITIVE, AND MUST THEREFORE BE REDUCED.

II.

<u>N.J.S.A.</u> 2C:21-2.1 was originally adopted by the Legislature and added to the Criminal Code in 1983. The statute has been amended several times. One of the original purposes of

the statute was "to prevent the sale of identification cards to be used by underage purchasers of alcoholic beverages."  Cannel, New Jersey Criminal Code Annotated, comment 2 on N.J.S.A. 2C:21-2.1 (2013).  However, the statute is worded more broadly, so as to encompass other forms of governmental documents that can be used for identification.  Ibid.

As initially enacted, N.J.S.A. 2C:21-2.1 contained only one section, which made the sale of a false government document a disorderly persons offense:

> A person who "knowingly" sells, offers or exposes for sale a document, printed form or other writing which simulates a driver['s] license or other document issued by a governmental agency and which could be used as a means of verifying a person's identity or age is guilty of a disorderly persons offense.
>
> [L. 1983, c. 565.]

The statute was amended in 1999, around the same time that driver's licenses were revamped in New Jersey to include new personal identifying information in the form of, among other things, a digitized photograph and signature, a bar code, and a magnetic strip.[4]  The Legislature strengthened N.J.S.A. 2C:21-2.1 in response to public concerns that the more detailed personal

---

[4] See News Release, Office of the Governor (Feb. 25, 1999), available at http://www.state.nj.us/transportation/about/press/1999/022699.shtm.

information stored on the new driver's licenses posed a greater risk for identity fraud and might greatly compromise privacy. See Statement to Assembly Bill No. 2623 (Nov. 9, 1998).

The 1999 amendment was aimed at prohibiting, "to the greatest extent possible," materials that are commonly used for, or in, the manufacturing of such licenses from "any alteration, delamination, duplication, counterfeiting, photographing, forging, or other modification." Ibid. The 1999 amendment also enhanced the severity of certain violations of N.J.S.A. 2C:21-2.1, upgrading them from a disorderly persons offense to a third-degree offense. It further added three new subsections, including subsections (b) and (d) that are now at issue in this case.

The statute was amended again in 2002 to broaden the scope of its privacy protections, by inserting and broadly defining the term "personal identifying information." L. 2002, c. 85. A year later in 2003, the Legislature further stiffened the penalties under the statute, by elevating violations of subsections (a) and (b) to second-degree offenses, violations of subsection (c) from fourth-degree to third-degree offenses, and violations of subsection (d) from disorderly persons offenses to fourth-degree offenses. L. 2003, c. 184.

Through its most recent amendment of N.J.S.A. 2C:21-2.1 in 2005, the Legislature expanded the class of documents covered by the statute to specifically include birth certificates, in addition to driver's licenses. L. 2005, c. 224.

Only two published cases have construed N.J.S.A. 2C:21-2.1, neither of which addressed the statute's constitutionality.[5] The arguments of unconstitutionality raised here by defendant are questions of first impression. We review those questions de novo because they concern issues of law. State v. Robinson, ___ N.J. ___, ___ (2014) (slip op. at 11); State v. Galicia, 210 N.J. 364, 381 (2012).

## A.

Our analysis begins by addressing defendant's claim that the criminal prohibitions in N.J.S.A. 2C:21-2.1(b) and (d) are unacceptably overbroad because they unduly restrict constitutionally-protected speech. We reject this contention,

---

[5] See State v. V.D., 401 N.J. Super. 527, 531 (App. Div. 2008) (reversing the trial court's imposition of certain probationary terms following the defendant's guilty plea of possessing a false governmental document, N.J.S.A. 2C:21-2.1(d)); State v. Liviaz, 389 N.J. Super. 401, 404, 407 (App. Div.) (reversing the Law Division's decision to overturn the prosecutor's denial of the defendants' admission into the pretrial intervention program, following their indictments that included charges of exhibiting false governmental documents, N.J.S.A. 2C:21-2.1(c), and possessing false governmental documents, N.J.S.A. 2C:21-2.1(d)), certif. denied, 190 N.J. 392 (2007).

both on its face and as applied to defendant's particular circumstances.

When the constitutionality of a statute is challenged, as it is here, on both the basis of vagueness and overbreadth, ordinarily the first step of judicial review is to determine if the statute is overbroad. State v. Lee, 96 N.J. 156, 164-65 (1984) (citing Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494, 102 S. Ct. 1186, 1191, 71 L. Ed. 2d 362, 369 (1982)). If the statute is held not to be overbroad, then the next step is to consider the statute for vagueness concerns. State v. Walker, 385 N.J. Super. 388, 402-03 (App. Div.), certif. denied, 187 N.J. 83 (2006).

The question of whether a statute is unconstitutionally overbroad "rests on principles of substantive due process." Town Tobacconist v. Kimmelman, 94 N.J. 85, 125 n.21 (1983); see also Karins v. Atl. City, 152 N.J. 532, 544 (1998); State v. Badr, 415 N.J. Super. 455, 468 (App. Div. 2010). As contrasted with a vagueness challenge, the question of overbreadth "is not whether the law's meaning is sufficiently clear, but whether the reach of the law extends too far." Town Tobacconist, supra, 94 N.J. at 125 n.21. "The evil of an overbroad law is that in proscribing constitutionally protected activity, it may reach farther than is permitted or necessary to fulfill the [S]tate's

interests." Ibid.; see also In re Hinds, 90 N.J. 604, 617 (1982); Badr, supra, 415 N.J. Super. at 466.

Here, the constitutionally-protected interests invoked by defendant are a citizen's rights of free expression under the First Amendment of the United States Constitution and under Article I, paragraph 6 of the New Jersey Constitution. See State v. Schmid, 84 N.J. 535, 560 (1980) (delineating the free-speech interests of New Jersey citizens under our State Constitution which, in certain respects, may be more expansive than those recognized federally under the First Amendment). Our federal and state constitutional heritage "serves to thwart inhibitory actions which unreasonably frustrate, infringe, or obstruct the expressional and associational rights of individuals." Ibid.; see also J.B. v. N.J. State Parole Bd., 433 N.J. Super. 327 (App. Div. 2013) (rejecting a claim of facial invalidity of the Parole Board's restrictions on Internet access and the expressive rights of persons who have committed sex offenses who are under parole supervision), certif. denied, 217 N.J. 296 (2014).

Defendant contends that subsections (b) and (d) of N.J.S.A. 2C:21-2.1 are overbroad because they unduly chill protected speech by persons who may create, alter, or possess mock governmental documents or personal identity materials for benign

reasons. For example, defendant posits that a person might create or alter a government document for artistic purposes, as is sometimes done in films, plays, or illustrated fiction. Alternatively, an individual might alter a birth certificate or driver's license of a famous person as a form of political satire. Or a student might create or store an image of a false government document for educational purposes, perhaps as an exercise in a course on criminology or in studying the ethical issues relating to information technology.

Defendant also posits that a person might simply possess such a false document or computer image by mistake. At the very least, he argues, the statute is overbroad because it lacks an explicit element requiring the State to prove the accused's specific intent to store or use such computer images or documents for an illicit purpose.

None of the hypothetical situations posed by defendant or that emerged during oral argument demonstrates that the statute is unconstitutionally overbroad. For one thing, the hypothetical situations do not pertain to the actual circumstances of this case. There is no indication whatsoever in the record that defendant possessed the computer images of driver's licenses and Social Security cards of other people, and had altered those images, in the pursuit of art, literature,

15

political satire, education, or protected expression. The closing argument delivered by his trial attorney did not portray him as an artist, author, political commentator, or student. Hence, the hypothetical scenarios imagined by his defense counsel have little or no relevance here. To the extent that the statute might be misused in a future prosecution against an artist, student or some other person truly engaged in protected expressive activity, that individual is free to pursue an as-applied constitutional challenge.

We reject defendant's contention that the statute fatally lacks a specific intent requirement, and thus penalizes individuals with an innocent state of mind who may possess false documents inadvertently or for benign reasons. Subsections (b) and (d) each explicitly require the State to prove that a defendant "knowingly" violated the terms of the statute. Under the Criminal Code's general state-of-mind definitions, "[a] person acts knowingly with respect to the nature of his conduct or the attendant circumstances if he is aware that his conduct is of that nature, or that such circumstances exist, or he is aware of a high probability of their existence." N.J.S.A. 2C:2-2(b)(2). The definition further clarifies that a person acts "knowingly" as to a result of his conduct "if he is aware that it is practically certain that his conduct will cause such a

result." Ibid.; see also State v. Cruz, 163 N.J. 403, 418 (2000).

Moreover, N.J.S.A. 2C:21-2.1 amplifies its knowing state-of-mind requirement by requiring proof that the document or writing possessed or made by the defendant is of a kind "which falsely purports" to be a driver's license, birth certificate, or some other document issued by a governmental agency that could be used for identification purposes. N.J.S.A. 2C:21-2.1(b) and (d) (emphasis added). Inanimate objects do not "purport" to do anything; people do. The statute thus clearly is targeted at defendants who "knowingly" possess or make forms of identification that are of a kind deliberately fashioned by a person — whether it be defendant himself or a third party — in a manner designed to "falsely purport" that those items are legitimate, government-issued forms of identification.

This manifest design of N.J.S.A. 2C:21-2.1 to steer clear of the benign possession of government identification documents was aptly confirmed by a question posed to counsel by the trial judge. The judge asked whether it would violate the statute if a parent had photocopied the Social Security card of his child at the child's request, in connection with the child's application for insurance coverage or college enrollment. The prosecutor agreed that such a situation is not to be

criminalized by the statute.  That is so because the parent in that situation would not be attempting to "falsely purport" his child's identification by making or possessing a copy of the child's Social Security card.[6]

Similarly, the same conclusion of inapplicability would also be likely if the falsified document used the name "John Doe," or "Kermit the Frog," or the address, "123 Main Street, Blackacre, NJ," or the image of Abraham Lincoln.  Such documents would probably be deemed so fanciful as to fall outside the scope of the language in N.J.S.A. 2C:21-2.1 requiring that the falsified document be such that it "could be used" to verify a person's identity.  N.J.S.A. 2C:21-2.1(b) and (d).  Cf. United States v. Gomes, 969 F.2d 1290, 1293 (1st Cir. 1992) (explaining, in an analogous context under 42 U.S.C.A. § 408(g)(3), that counterfeit governmental documents, though they

---

[6] Although the prosecutor voluntarily dismissed the portion of the indictment alleging in Counts Three through Six that defendant illegally "possesse[d] devices or materials to make" false governmental documents, we take this opportunity to express our agreement with the State's concession that the statute should not be read to ban a person from possessing an ordinary household printer where such a person has not used that printer to create an item that "falsely purports" to be governmental identification documents.  See N.J.S.A. 2C:21-2.1(b).  The same would be true of the mere benign possession of computer ink or paper.  The "falsely purports" ingredient of the statute plays a critical role in making the possession of such common items illegal.

need not be "masterpieces," must still have "enough verisimilitude to deceive an ordinary person").

In cases such as this one in which a defendant has been charged, among other things, with the illegal possession of false governmental documents under N.J.S.A. 2C:21-2.1(d), the mens rea required to show the defendant's culpability is further constrained by the Criminal Code's general concepts of possession and by case law. N.J.S.A. 2C:2-1(a) specifies that "[a] person is not guilty of an offense unless his liability is based on conduct which includes a voluntary act or the omission to perform an act of which he is physically capable." (Emphasis added). In keeping with that predicate of voluntariness in possession cases, the Code further instructs that "[p]ossession is an act, [that qualifies for culpability], if the possessor knowingly procured or received the thing possessed or was aware of his control thereof for a sufficient period to have been able to terminate his possession." N.J.S.A. 2C:2-1(c).

Our courts have long recognized the term "possession" must be "'given a strict construction in statutes defining criminal and penal offenses.'" State v. McCoy, 116 N.J. 293, 299 (1989) (quoting State v. Labato, 7 N.J. 137, 148 (1951)). Pursuant to that strict construction, the concept of possession "signifies a knowing, intentional control of a designated thing, accompanied

by a knowledge of its character."  State v. Pena, 178 N.J. 297, 305 (2004) (emphasis in original) (internal quotations marks and citations omitted).  "Intentional control and dominion, in turn, means that the defendant was aware of his or her possession." McCoy, supra, 116 N.J. at 299 (citing State v. DiRienzo, 53 N.J. 360, 370 (1969)).  Such possession may be actual or constructive.  Ibid.  A jury "may draw an inference of possession from all of the surrounding circumstances when it is more likely than not that the proven facts point to the inferred fact of possession."  Id. at 300.

We applied these principles in an analogous computer-file context in State v. Lyons, 417 N.J. Super. 251, 264-69 (App. Div. 2010), in rejecting a defendant's claim that his conduct in placing child pornography images on a file-sharing program he had installed on his computer was merely passive behavior that could not provide a basis for criminal liability.  We noted that the defendant had "acted with complete awareness of the relevant attendant circumstances," i.e., that the shared folder materials stored on his computer "were available to all other users of the network."  Id. at 263.  The State's proofs in Lyons also showed that the defendant had "also acted with awareness of the practical certainty that his conduct would result in another user viewing and downloading the materials."  Ibid.  We

20

consequently reversed the trial court's dismissal of indictment counts charging Lyons with violations of the child pornography statute, N.J.S.A. 2C:24-4(b)(5)(a).

The statute now before us, N.J.S.A. 2C:21-2.1, likewise should be construed in a manner that examines a defendant's awareness of "the attendant circumstances" and the "nature" of his or her conduct as an alleged possessor of false governmental documents stored on a computer. N.J.S.A. 2C:2-2(b)(2). For example, if another family member shared a computer with a relative who created or stored the illegal documents or images in a file or folder on that device — without knowing that those files were on the computer or without any awareness that they are of a kind that may be used to "falsely purport" another person's identity — the family member would not be culpable under N.J.S.A. 2C:21-2.1. See Pena, supra, 178 N.J. at 304-05 (recognizing that a person who possesses a thing unknowingly, either stemming from a failure to appreciate not just the act of possessing, but also a failure to appreciate what is possessed, is not criminally liable for such possession).

On the other hand, a defendant's ignorance of the law making his or her possession of something illegal is not, in and of itself, a basis to immunize a criminal defendant. State v. Rowland, 396 N.J. Super. 126, 129 (App. Div. 2007), certif.

denied, 193 <u>N.J.</u> 587 (2008).  Also, a possession offense under subsection (d) could occur where the defendant himself created the phony documents or, alternatively, if he had obtained them from the black market and downloaded them onto his own computer. In either situation, the defendant's knowing possession of the illicit creations would make him culpable.

The statutory scheme of <u>N.J.S.A.</u> 2C:21-2.1 as a whole, when construed in a manner consistent with other portions of the Criminal Code and other well-established limiting principles in case law, sufficiently constricts the scope of criminal liability under subsections (b) and (d) to pass muster under constitutional principles of overbreadth.  The power of a court to declare a statute unconstitutional must be "delicately exercised."  <u>Hamilton Amusement Ctr. v. Verniero</u>, 156 <u>N.J.</u> 254, 285 (1998), <u>cert. denied</u>, 527 <u>U.S.</u> 1021, 119 <u>S. Ct.</u> 2365, 144 <u>L. Ed.</u> 2d 770 (1999).  Defendant's conjectural claims of overbreadth fail to overcome the "strong presumption of constitutionality that attaches to a statute."  <u>Ibid.</u>  In reaching that conclusion, however, we leave open the possibility of future "as-applied" challenges to the statute by defendants who are in factually distinguishable circumstances.  <u>See J.B.</u>, <u>supra</u>, 433 <u>N.J. Super.</u> at 344-46 (rejecting the appellants' claims that certain statutes and regulations, on their face,

violated their constitutional rights, without precluding future "as-applied" challenges).

In sum, defendant's overbreadth argument must be rejected because subsections (b) and (d) of N.J.S.A. 2C:21-2.1, both on their face and as applied to his own circumstances, do not prohibit a "'substantial amount of constitutionally protected conduct.'"  Lee, supra, 96 N.J. at 164-65 (quoting Hoffman Estates, supra, 455 U.S. at 494, 102 S. Ct. at 1191, 71 L. Ed. 2d at 369).

## B.

Defendant next argues that subsections (b) and (d) of N.J.S.A. 2C:21-2.1 are unconstitutionally void for vagueness because those provisions allegedly fail to give adequate notice of the conduct they prohibit and to provide guidelines for enforcement, leading to arbitrary results.  We disagree.

The constitutional doctrine of vagueness "is essentially a procedural due process concept grounded in notions of fair play."  State v. Emmons, 397 N.J. Super. 112, 124 (App. Div. 2007) (internal quotation marks and citations omitted), certif. denied, 195 N.J. 421 (2008).  Our State Supreme Court has summarized the fair-notice concerns that underlie the vagueness doctrine as follows:

> Clear and comprehensible legislation is a fundamental prerequisite of due process of

law, especially where criminal responsibility is involved. Vague laws are unconstitutional even if they fail to touch constitutionally protected conduct, because unclear or incomprehensible legislation places both citizens and law enforcement officials in an untenable position. Vague laws deprive citizens of adequate notice of proscribed conduct, . . . and fail to provide officials with guidelines sufficient to prevent arbitrary and erratic enforcement.

[Town Tobacconist, supra, 94 N.J. at 118 (citations omitted).]

A theoretical ambiguity or lack of clarity in a criminal statute is not enough, however, to render that law void for vagueness. It is well settled that "[a] criminal statute is not impermissibly vague so long as a person of ordinary intelligence may reasonably determine what conduct is prohibited so that he or she may act in conformity with the law." State v. Saunders, 302 N.J. Super. 509, 520-21 (App. Div.), certif. denied, 151 N.J. 470 (1997). The test for vagueness therefore hinges on whether "persons 'of common intelligence must necessarily guess at [the statute's] meaning and differ as to its application.'" State v. Mortimer, 135 N.J. 517, 532 (1994) (quoting Connally v. Gen. Constr. Co., 269 U.S. 385, 391, 46 S. Ct. 126, 127, 70 L. Ed. 322, 328 (1926)); see also Town Tobbacconist, supra, 94 N.J. at 118.

Judicial review of a vagueness challenge is not "'a linguistic analysis conducted in a vacuum.'" Saunders, supra, 302 N.J. Super. at 521 (quoting In re DeMarco, 83 N.J. 25, 37 (1980)). Instead, our review "requires consideration of the questioned provision itself, related provisions, and the reality in which the provision is to be applied." Ibid.

Defendant contends that subsections (b) and (d) of N.J.S.A. 2C:21-2.1 are unconstitutionally vague on their face because the wording of those provisions does not place a person of ordinary intelligence on reasonable notice of what activities are prohibited. To prevail on such a facial challenge, defendant "must establish that no set of circumstances exists under which the [statute] would be valid," United States v. Salerno, 481 U.S. 739, 745, 107 S. Ct. 2095, 2100, 95 L. Ed. 2d 697, 707 (1987) (emphasis added), or that the statute lacks any "plainly legitimate sweep," Broadrick v. Oklahoma, 413 U.S. 601, 615, 93 S. Ct. 2908, 2918, 37 L. Ed. 2d 830, 842 (1973). A reviewing court should uphold a vagueness challenge "'only if the enactment is impermissibly vague in all of its applications.'" Town Tobacconist, supra, 94 N.J. at 98 (emphasis added) (quoting Hoffman Estates, supra, 455 U.S. at 494-95, 102 S. Ct. at 1191, 71 L. Ed. 2d at 369). Defendant has not met this considerable burden.

Defendant maintains that the phrase "a document or other writing," which appears in both subsections (b) and (d) of N.J.S.A. 2C:21-2.1, is too unclear and does not alert a person of ordinary intelligence of the illegal nature of the items that he may create or possess. In particular, he complains that the statutory terms "document" or "writing" do not convey that they are meant to encompass electronically-stored computer files. In a related argument, which we address in Part II(C), infra, defendant contends that the trial judge erred in the manner in which he defined the term "document" for the jurors.

Although the statute perhaps could have been drafted more precisely in defining these terms, we are not persuaded that the degree of imprecision is constitutionally intolerable. Nor are we convinced that the statute is too unclear in "all of its applications." Ibid.

"[T]he words used in a statute carry their ordinary and well-understood meanings," unless the codified framework suggests otherwise. Mortimer, supra, 135 N.J. at 532 (citing State v. Afanador, 134 N.J. 162, 171 (1993)); see also State v. Lashinsky, 81 N.J. 1, 18 (1979) (explaining that notions of common intelligence, coupled with "ordinary human experience," bear upon the judicial assessment of vagueness). Those "ordinary and well-understood meanings" support the State's

position concerning the term "document," as it is used in subsections (b) and (d).

Under ordinary modern usage, the term "document"[7] is commonly understood to include items containing words or images that are stored in computer files. Although we could take judicial notice of that common understanding, we need not do so because such everyday usage is confirmed by the definitions of a "document" set forth in several (if not all) dictionaries, and also by other sources.

The definitions of words published in dictionaries, although they might not always be dispositive in judicial analysis, have frequently been consulted by courts on evaluating whether those words, when used in statutes, are unconstitutionally vague. For example, in Mortimer, supra, 135 N.J. at 532, the Supreme Court cited dictionary definitions of various terms that were used in another criminal statute in evaluating whether those terms were unconstitutionally vague. Similarly, we have referenced editions of Webster's Dictionary

---

[7] We need not address whether a computer-stored file can also constitute a "writing" under N.J.S.A. 2C:21-2.1(b) and (d), since the statute is written in the disjunctive.

in ascertaining the ordinary meanings of certain words used in other statutes.[8]

Webster's Dictionary defines the term "document" to include "a computer file containing information input by a computer user and usually created with an application (as a word processor)."[9] Likewise, the Oxford Dictionary defines the term, "document," as "a piece of written, printed, or electronic matter that provides information or evidence or that serves as an official record."[10] Macmillan Dictionary defines the term "document" as including "a

---

[8] See, e.g., State v. Allen, 334 N.J. Super. 133, 139 (App. Div. 2000) (considering the defendants' void for vagueness argument and explaining that "[i]t is permissible to adopt the simplicity and brevity of Webster's Dictionary" to determine the definition of a term (citing Betts v. Rector, 191 F.3d 447 (4th Cir. 1999))); see also State v. Cullen, 424 N.J. Super. 566, 581 (App. Div. 2012) (turning to Webster's Third New International Dictionary to ascertain the definition of "harass," in response to the defendants' contention that the term, as used in the statute at issue, was impermissibly vague), certif. denied, 213 N.J. 397 (2013); State v. Dixon, 396 N.J. Super. 329, 338 (App. Div. 2007) (using Webster's Dictionary to determine the definition of "handicapped," in considering whether certain provisions of the Law Against Discrimination were unconstitutionally vague).

[9] Document, Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/document (last visited June 24, 2014) (emphasis added).

[10] Document, Oxford Dictionaries Online, http://www.oxford dictionaries.com/us/definition/american_english/document?q=docum ent (last visited June 24, 2014) (emphasis added).

computer file that you can write in."[11]  Furthermore, Cambridge Dictionary defines "document" to also encompass, along with more traditional meanings, "a file on a computer in which text is stored."[12]

These definitions, contained in several widely-used and authoritative dictionaries, do not confine the meaning of the term "document" to papers or other tangible forms of expression. Instead, they reflect that the term "document" is now commonly understood in modern usage to encompass forms of expression or images when they are stored in electronic form, whether or not they are ever printed out.

This prevalent modern usage concerning the term "document" in our digital age is also borne out in other contexts.  For example, Rule 4:18-1(a) concerning the production of documents in civil cases provides for an opposing party's access to "designated documents," which include, among other things, "electronically stored information, and any other data or data compilations stored in any medium from which information can be

---

[11]  Document, Macmillan Dictionary, http://www.macmillan dictionary.com/dictionary/american/document (last visited June 25, 2014) (emphasis added).

[12]  Document, Cambridge Dictionary, http://www.dictionary. cambridge.org/us/dictionary/american-english/document_1?q= document (last visited June 25, 2014) (emphasis added). But see Black's Law Dictionary 555 (9 ed. 2013) ("Something tangible on which words, symbols, or marks are recorded.").

obtained and translated, if necessary, . . . into reasonable usable form."

Likewise, in criminal practice, the Rules of Court authorize post-indictment discovery by a defendant of "books, tangible objects, papers or <u>documents</u> obtained from or belonging to the defendant, including, but not limited to, writings, . . . images, electronically stored information, and any other data or data compilations stored in any medium from which information can be obtained and translated, if necessary, into reasonably usable form." <u>R.</u> 3:13-3(b)(1)(A) (emphasis added). Reciprocally, <u>Rule</u> 3:13-3(b)(2)(B) similarly authorizes the State to obtain discovery of relevant "books, papers, <u>documents</u> or tangible objects, . . . or copies thereof, . . . including, but not limited to, writings, . . . images, electronically stored information, and any other data or data compilations stored in any medium from which information can be obtained and translated, if necessary, into reasonably usable form." (Emphasis added). Presumably, the discovery exchanged in this very case was guided by these broad modern concepts of a "document."

We also recognize that computer software manufacturers routinely identify files containing words or images as

"documents."[13]  The term surely has evolved with technology since the days of the quill pen and the inkwell.

Given these common modern usages, we reject defendant's contention that N.J.S.A. 2C:21-2.1(b) and (d) do not place persons of ordinary intelligence on sufficient notice that items electronically stored in their computers can qualify as "documents" under those criminal provisions.  The fact that people sometimes do not print out such electronically stored documents on paper does not mean that the statute is unconstitutionally ambiguous.  Indeed, it is incontrovertible that people frequently transmit electronically-stored documents as e-mail attachments to one another without converting those items to tangible form.

---

[13] A few examples readily illustrate that the term "document" is now used in the marketplace and in the public domain to refer to electronic data files, accessible through computer software. See, e.g., The Apache OpenOffice Project Announce The Release Of Apache OpenOffice 4.1, Apache Software Found. (Apr. 29, 2014), https://blogs.apache.org/OOo/entry/the_apache_openoffice_project _announce (describing the open-source software platform that can edit and manipulate "documents" and spreadsheets); Google Docs, http://www.google.com/docs/about (last visited June 19, 2014) ("Google Docs brings your documents to life with smart editing and styling tools to help you easily format text and paragraphs." (Emphasis added)); Press Release, Microsoft Corp., Microsoft Unveils The New Office (July 16, 2012), available at http://www.microsoft.com/en-us/news/press/2012/jul12/07- 16officepr.aspx (announcing the ability to access, save, and share "documents" in the updated software platform).

We therefore conclude that the statute is sufficiently worded to pass constitutional muster on its face. Moreover, the State is not acting in an arbitrary fashion by prosecuting a person such as defendant, despite the absence of any tangible printouts of the offending electronically-stored material found in his possession.

To the extent that defendant is also advancing an "as-applied" vagueness challenge, we reject that claim as well. The altered driver's licenses, Social Security cards, and photographic images stored on his computer all can be logically and fairly treated as "documents" under the statute. The items contain identification-related wording, which fortifies the notion that they were created or possessed in order to serve as false portrayals of authentic governmental documents of identification. The record before us contains no reasonable basis for defendant to contend that a person of ordinary intelligence in his circumstances would have the right to presume that the statute is inapplicable.

We therefore reject defendant's claims that the statute is unconstitutionally void for vagueness.

### C.

Defendant next argues that the trial judge erroneously included in the jury charge a definition of the term "document,"

and therefore improperly "directed" the jury to return a guilty verdict against him as to that element of the case. We disagree.

During the judge's instructions to the jury, he defined several of the elements within N.J.S.A. 2C:21-2.1(b) and (d). Those elements included the mental state of "knowingly" required for the offenses, as well as definitions for the terms "to make" and "document."[14] When defining the term "document" in particular, the judge instructed the jury as follows:

> A document is defined as an original or official paper relied upon as the basis, proof or support of something; something, such as a photograph or a recording; a writing conveying information; or computer files containing information inputted by a computer user and usually created with an application such as a word processor or image processor.

This definition supplied by the court, defendant argues, improperly abrogated the jury's role in rendering a factual finding about whether he made or possessed "documents" in violation of the statute. He argues that the jury should have determined on its own whether images or items electronically stored on a computer may qualify as documents, as that term is

---

[14] Defendant does not challenge the court's instructions concerning the meanings of "knowingly" and "to make," but we mention them to provide a context of the judge's conscientious endeavor to define material terms in the statute for the jurors.

used in N.J.S.A. 2C:21-2.1. Accordingly, defendant maintains that the court's instruction amounted to a directed verdict, and his conviction must be reversed on this basis.

In a supplemental letter, defendant advised us that the new Model Criminal Jury Charges for N.J.S.A. 2C:21-2.1(b) and (d), which were issued earlier this year while his appeal was pending, support his position. He contends that the new model charges implicitly call for the jury, rather than the trial court, to determine whether items in a defendant's possession are "documents" or "writings."

In considering defendant's criticisms of the trial court's charge, we are guided by well-settled principles concerning the State's burden of proof in a criminal case and the impropriety of directed verdicts that relieve the State of its important evidential obligations. Fundamentally, the prosecution bears the constitutional burden of proving each element of a crime beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 1072-73, 25 L. Ed. 2d 368, 375 (1970); State v. Hill, 199 N.J. 545, 558 (2009). Equally fundamental is a criminal defendant's constitutional right to a trial by jury. State v. Harris, 141 N.J. 525, 578 (1995); State v. Collier, 90 N.J. 117, 122 (1982). "Integral to [the right of trial by jury]

34                                                          A-6292-11T2

is a jury verdict free from untoward interference from any source, including the court." Collier, supra, 90 N.J. at 122.

"A directed verdict results when the court instructs the jury to find the defendant guilty of a particular charge[.]" State v. Ragland, 105 N.J. 189, 202 (1986). "[N]o matter how compelling the evidence, a trial court may not direct a verdict against a defendant in a criminal case." Collier, supra, 90 N.J. at 122 (citations omitted); see also State v. Vick, 117 N.J. 288 (1989) (reversing the jury's verdict because the trial court's incorrect instruction amounted to a directed verdict on an essential element of the gun charge); Ragland, supra, 105 N.J. at 202 ("[T]he New Jersey cases require [] that there be no directed verdict in a criminal case.").

We are unpersuaded that the trial judge's instruction in this case explaining the meaning of the statutory term "document" to the jurors ran afoul of these principles. The instruction was appropriate and fair, and it did not infringe upon the jurors' fact-finding role.

A trial judge is empowered to define legal terms so as to aid the jury in reaching its verdict. See State v. Saunders, 75 N.J. 200, 205 (1977); State v. Wilbely, 63 N.J. 420, 421 (1973); State v. Clark, 58 N.J. 72, 82 (1971). Indeed, the trial court has "a mandatory duty . . . to instruct the jury as to the

fundamental principles of law which control the case." State v. Butler, 27 N.J. 560, 595 (1958). "Among such principles is the definition of a crime[.]" Ibid.

The legal definitions that the trial judge provided to the jurors here were for material terms in the statute, such as what it means for a person to act "knowingly," as both N.J.S.A. 2C:21-2.1(b) and (d) require. The judge also supplied a definition to the jury that fairly explained how the term "to make," as used in subsection (b), should be understood in the overall context of the statute. Likewise, the judge appropriately defined the term "document" under N.J.S.A. 2C:21-2.1 to include computer files and electronically stored information. As we have shown in Part II(B), supra, the judge's definition of that term is consistent with many dictionary definitions and with common modern usage.

We do not regard the court's charge providing a definition for the term "document" to be, as defendant claims, a judicially-directed verdict on an essential element of the charged offenses. The jury was free to consider all of the evidence, including the items seized from defendant's apartment and the lay and expert testimony of the State's witnesses, and to evaluate whether or not that proof met the statutory criteria.

Counsel at trial hotly disputed whether the computer-related items seized from defendant were sufficient to establish his guilt beyond a reasonable doubt. Based upon a flawed interpretation of the statute, the defense argued that the items needed to be in tangible form in order for the State to establish a violation of the statute. The trial judge appropriately dispelled that misconception for the jurors. In doing so, the court justifiably prevented a verdict from being reached based upon an incorrect understanding of the law, or upon speculation or confusion.

The recently-adopted model jury charges for subsections (b) and (d) do not invalidate the instruction that the judge provided in this case at a time when there was no such model language to guide him. In pertinent part, the new charge for N.J.S.A. 2C:21-2.1(b) defines a "writing" as follows:[15]

> "Writing" includes printing or . . . any other method of recording information, money, coins, tokens, stamps, seals, credit cards, badges, trademarks, access devices, and other symbols of value, right, privilege, or identification, including retail sales receipts, universal product code (UPC) labels and checks.[]
>
> The second element that the State must prove beyond a reasonable doubt is that the . . .

---

[15] For stylistic reasons, we eliminate from our quotation the portions of the published model charge appearing in bold font.

[<u>document</u>] [or] [<u>other writing</u>][][16] was falsely purported to be a . . . [driver's license] [birth certificate] [or] [<u>other document</u>][] issued by a governmental agency. . . . The second element also requires that the State prove beyond a reasonable doubt (or it has been stipulated) that the . . . [<u>document</u>] [<u>printed form</u>] [or] [<u>other writing</u>][], purported to be issued by a governmental agency, could be used as a means of verifying a person's identity or age or other personal identifying information.

[<u>Model Jury Charge (Criminal)</u>, "Making False Governmental Documents" (2014) (emphasis added) (footnote omitted).]

Likewise, the new model charge for subsection (d) contains similar language that broadly encompasses "any other method of recording information":

> <u>"Writing" includes</u> printing or . . . <u>any other method of recording information</u>, money, coins, tokens, stamps, seals, credit cards, badges, trademarks, access devices, and other symbols of value, right, privilege, or identification, including retail sales receipts, universal product code (UPC) labels and checks.[]

---

[16] Although there is no separate definition of a "document," the model charge for subsection (b) appears to treat, in two places, a "document" as a subset of a "writing" (i.e., "other writing") but, in other places, a "writing" as a subset of a "document" (i.e., "other document"). We need not resolve that apparent internal inconsistency here, or how it relates to the statute's disjunctive use of the two terms.

> The State must also prove beyond a reasonable [doubt] that the defendant possessed a <u>document or other writing</u>.[17]
>
> [<u>Model Jury Charge (Criminal)</u>, "Possession of False Governmental Documents" (2014) (emphasis added) (footnote omitted).]

The trial judge's instruction in this case similarly endeavored to clarify for the jurors the scope of the statute, and the words used within it. The instruction provided was both fair and consistent with the law. The verdict was not improperly directed.

III.

> **[At the direction of the court, the published version of this opinion omits Part III discussing defendant's claim of an excessive sentence. <u>See</u> <u>R.</u> 1:36-3.]**

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[17] Here, the charge for subsection (d) appears to treat a "document" as a subset of a "writing."