756 A.2d 1087 (2000)
334 N.J. Super. 133
STATE of New Jersey, Plaintiff,
v.
David ALLEN, Jr., Brandon Cruz, Jennifer Dowell, Jessica Fry, Christal Lavary, William MacKay, Marni Solomon, Daniel Vistad, Defendants.
Superior Court of New Jersey, Law Division (Criminal), Monmouth County.
Decided March 16, 2000.
*1088 Jacquelynn Seely, Asst. Prosecutor for the State (John Kaye, Prosecutor).
Seymour Gelzer, Esq., Cranbury, for Defendant, David Allen, Jr.
Robert Eisler, Esq., Deal, for Defendant, Brandon Cruz.
Paul Edinger, Esq., West Long Branch, for Defendant, Jennifer Dowell.
L. Gilbert Farr, Esq., Manahawkin, for Defendant, Jessica Fry.
Jerome Kineavy, Esq., Shrewsbury, for Defendant, Christal Lavary.
Michael J. Pappa, Esq., Hazlet, for Defendant, William MacKay.
Alexander DeSevo, Esq., Secaucus, for Defendant, Marni Solomon.
Alexander Her, Esq., Shrewsbury, for Defendant, Daniel Vistad.
DE STEFANO, J.S.C.
New Jersey and twenty other States include protection in their bias crime statutes for persons victimized because of handicap or physical disability. These statutes usually call for enhanced punishment. A case of first impression in this state, and the nation, this court holds that the word "handicap" is not unconstitutionally vague both as applied or facially.
The Monmouth County Grand Jury indicted the defendants for kidnaping 2C:13-1(b), conspiracy to commit same 2C:5-2, aggravated assault and harassment by bias intimidation 2C:12-1(e); 2C:33-4(d), terroristic threats 2C:12-3, weapons offenses 2C:39:4(d); 2C:39-5(d), and aggravated criminal sexual contact 2C:14-3(a). The victim, E.K., is a twenty-three year old *1089 male who is learning disabled, of low I.Q., exceptionally short in stature, deaf in one ear, speech impaired, and has a pin hole in his heart. E.K., and some of the Defendants, attend special education classes together. Over a three day period, in January of 1999, it is alleged that E.K. was kidnaped, forced to drink a mixture of iced tea and alcohol, taped to a chair, had his head and eye brows shaved, punched about his face and body, forced to drink urine, kiss the shoes of the Defendants, lick a drink off the floor, dress in women's clothing, beat with beads and a curtain rod, had lit cigarettes put out on his chest, ashes flicked into his mouth, had a pillow case placed over his head and was ultimately dumped into a deserted wooded area known as the "pit".[1]
Defendants move to dismiss the indictment arguing that the word "handicap" is unconstitutionally vague. An indictment may be dismissed only on the clearest and plainest grounds giving the State the benefit of every reasonable inference of the evidence presented to the Grand Jury. State v. LeFurge, 101 N.J. 404, 502 A.2d 35 (1986); State v. Vasky, 218 N.J.Super. 487, 528 A.2d 61 (App.Div.1987); State v. Epps, 284 N.J.Super. 373, 665 A.2d 412 (Law Div.1995).
A defendant may be sentenced to an extended term of imprisonment where,
"the defendant in committing the crime acted with the purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity."
In 1994, the New Jersey Supreme Court determined that if a person harasses another under 2C:33-4(d), and acts with a purpose to intimidate an individual because of race, color, religion, sexual orientation or ethnicity; that person is subject to enhanced punishment and the statute is not unconstitutionally vague. State v. Mortimer, 135 N.J. 517, 641 A.2d 257 (1994). The following statutes, 2C:33-4(d), 2C:12-1(e) and 2C:44-3(e) were amended in 1997 adding gender and handicap as categories. The Legislative history does not define handicap or manifest the Legislature's intent concerning handicapped persons.
"Vagueness is essentially a procedural due process concept grounded in notions of fair play. The vagueness test demands that a law be sufficiently clear and precise so that people are given adequate warning of the law's reach. A penal statute should not become a trap for a person of ordinary intelligence acting in good faith, but rather should give fair notice of conduct that is forbidden. A defendant should not be obliged to guess whether his conduct is criminal. Nor should the statute provide so little guidance to the police, that law enforcement is so uncertain as to become arbitrary. State v. Lee, 96 N.J. 156 at 165, 166, 475 A.2d 31 (1984)."
The Supreme Court noted the Legislature's considerable latitude in addressing criminal conduct. Where prohibited behavior is not susceptible to precise definition it should not lead to legislative paralysis. Id. at 166, 475 A.2d 31. The vagueness doctrine cannot be mechanically applied. State v. Cameron, 100 N.J. 586, 498 A.2d 1217 (1985). A criminal statute that is facially vague, "may be voided if it is impermissibly vague in all its applications, that is, there is no conduct that it proscribes with sufficient certainty." State v. Cameron, 100 N.J. at 593, 498 A.2d 1217. A statute challenged for vagueness as applied will fall, "if the law does not with sufficient clarity prohibit the conduct against which it is sought to be enforced." Id. at 593, 498 A.2d 1217. Our Supreme Court went on,
"To summarize, a law that is challenged for facial vagueness is one that is assertedly and permissively vague in all its applications. A statute that is challenged as applied, however, need not be *1090 proven vague in all conceivable contexts, but must be shown to be unclear in the context of the particular case. In either a facially or as applied vagueness attack, the level of judicial scrutiny and degree of required clarity will depend on the purpose of the statute, the context in which the law is challenged, the conduct that is subject to its strictures, the nature of the punishment that is authorized, and finally, the potential impact of the statute upon activities and interest that are constitutionally protected." Id. at 594, 498 A.2d 1217.
There is no constitutionally protected right to attack another. R.A.V. v. City of St. Paul, 505 U.S. 377, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992).
When interpreting criminal statutes, the court looks to common definitions, the context of the words that they are associated with in the statute, and the intent of the Legislature. State v. Afanador, 134 N.J. 162, 631 A.2d 946 (1993); State v. Mortimer, supra. "Absent any explicit indications of special meanings, the words used in the statute carry their ordinary and well understood meanings." State v. Afanador, 134 N.J. at 171, 631 A.2d 946.
The New Jersey Law Against Discrimination N.J.S.A. 10:5-1 et seq. (N.J.L.A.D.) defines handicap as:
"Suffering from physical disability, infirmity, malformation or disfigurement which is caused by bodily injury, birth defect or illness, which shall include, but not limited to, lack of physical coordination, blindness, or visual impediment, deafness or hearing impediment, speech impediment, any mental, psychological or neurological condition." N.J.S.A. 10:5-5(q).
The Americans With Disabilities Act of 1990, 42 U.S.C. 12102 et seq. (A.D.A.) treats handicap and disability as synonymous reflecting Congressional awareness that individuals with disability find the use of the word "handicap" objectionable. 42 U.S.C. 12102(2) defines disability as a physical or mental impairment that substantially limits one or more of the major life activities of such individual. A disability exists only where an impairment substantially limits a major life activity. Major life activities include hearing, speaking, learning. Substantially limits refers to severity, duration and permanency. Unlike the A.D.A. the N.J.L.A.D. does not require a substantial impairment of a major life activity for classification as handicapped. The New Jersey Legislature has given a broader definition encompassing greater latitude and ensuring more protection. Both the N.J.L.A.D. and the A.D.A. are remedial social Legislation which are to be liberally construed, as contrasted with criminal statutes that must be strictly construed against the State. State v. Galloway, 133 N.J. 631, 628 A.2d 735 (1993). It is instructive that the Congress of the United States, the New Jersey Legislature and the United States Supreme Court have all had difficulty in defining handicap or disability by enumeration. Any list would, of necessity, leave out persons that should be covered. A definition that is either too broad or vague is problematic. Murphy v. United Parcel Service, 527 U.S. 516, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999); Sutton v. United Air Lines, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999); State v. Lee 96 N.J. 156, 475 A.2d 31 (1984); Olson v. General Electric, 101 F.3d 947 (3d Cir.1996); Lawrence v. National Westminster Bank New Jersey, 98 F.3d 61 (3d Cir.1996); Nieves v. Individualized Shirts, 961 F.Supp. 782 (D.N.Y.1997).
When all else fails, there is always plain language and common sense. It is permissible to adopt the simplicity and brevity of Webster's Dictionary. Betts v. Rector, 191 F.3d 447 (4th Cir.1999). Webster's Dictionary defines handicapped as, "having a physical or mental disability that substantially limits activity." A disability means, "incapacitated by illness, injury or wound. "WEBSTER'S DICTIONARY 359 (9th ed.1988). This court adopts Webster's Dictionary *1091 definition of handicapped with the following observations.
A disability, disease or defect must be of such a nature, that a reasonable person in the position of the defendants would be on fair notice that E.K. is handicapped. The term "substantially limits" refers to severity, duration and permanency. "Activity" refers to major life activities such as, but not limited to, the use of one's five senses, ability to ambulate and substantial cognitive deficiencies. An enumeration of all possibilities is fruitless. Common understanding and the specific facts of a case will provide adequate focus to sharpen the amorphous. Philip K. Howard, "The Death of Common Sense," (St. ed.1994).
Bias crimes are characterized by hatred that motivates criminal activity against a particular group. The handicapped are ordinarily victimized because of their special vulnerability. This does not mean that every confrontation of unequal position or physical difference is a bias crime. The law does not focus on the actors superior physical or mental condition. What is protected against is the particular vulnerability, caused by disability, of the victim. All of us are, to one degree or another, less abled or vulnerable. What must be established is a floor of protection for the handicapped. State v. Scherzer, 301 N.J.Super. 363, 694 A.2d 196 (App.Div.1997), N.J.S.A. 2C:44-1 (13).
"It is insufficient to exhibit bias in the course of committing crime; rather actor must intentionally select victim because of victim's race, creed color or ethnicity. The use of the term "because of" in a hatecrime statute connotes a causal link between the infliction of injury and bias motivation..." State v. Apprendi, 159 N.J. 7, at 28, 731 A.2d 485 (1999).
The law is in a state of flux. When a defendant commits a bias crime he is subject to sentencing enhancement. State v.Apprendi 159 N.J. 7, 731 A.2d 485 (1999). The Apprendi case is before the U.S. Supreme Court. Apprendi v. State, ___ U.S. ___, 120 S.Ct. 525, 145 L.Ed.2d 407 (1999). The court must decide if a "biased purpose" is an element of the offense to be proved beyond a reasonable doubt before a jury, or a sentencing enhancer. In either event, the foregoing definitions should prove helpful. In this case, the defendants were indicted for aggravated assault and harassment by bias intimidation, 2C:12-1(e); 2C:33-4(d), so a jury will decide these charges.
Giving the State the benefit of the reasonable inferences of the evidence presented to the Grand Jury, E.K. falls within the definition of "handicap". N.J.S.A. 2C:12-1(e), 2C:33-4(d) and 2C:44-3(e) are not vague facially or as applied to this case.
For the foregoing reasons, defendant's motion is denied.
NOTES
[1] This is written refinement of an oral opinion decided on 3/16/2000.