SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State v. David T. Pomianek, Jr.** (A-32/33-13) (072293)

**Argued October 20, 2014 -- Decided March 17, 2015**

**ALBIN, J., writing for a unanimous Court.**

At issue in this appeal is the constitutionality of N.J.S.A. 2C:16-1(a)(3), a bias-crime statute that allows a jury to convict a defendant even when bias did not motivate the commission of the offense.

Defendant David Pomianek, Jr., co-defendant Michael Dorazo, Jr., and Steven Brodie, Jr., worked for the Parks and Recreation Division of the Gloucester Township Department of Public Works. Defendant and Dorazo, who are Caucasian, worked as truck drivers. Brodie, who is African-American, worked as a laborer. On April 4, 2007, these men were assigned to work at an old garage used for storage by Public Works. In the garage was a sixteen-foot long and eight-foot wide steel storage cage. The cage was enclosed by a heavy chain-link fence on three sides and a cinder block wall on the fourth side and was secured by a sliding chain-link door with a padlock. A number of employees were horsing around in the building and "wrestling" in the cage. In a ruse, Dorazo approached Brodie and told him that their supervisor needed an item from the cage. Once inside the cage, Dorazo shut the cage door, locking Brodie inside.

A number of Public Works employees began laughing, but Brodie found no humor in his predicament. Brodie recalled defendant saying, "Oh, you see, you throw a banana in the cage and he goes right in," which triggered more laughter among the men. Brodie considered the remark to be "racial" in nature. From his perspective, the line about "throwing the banana in there" was like "being called a monkey in a cage." Brodie admitted, however, that he never heard defendant call him a monkey. The cage door was unlocked after three to five minutes. Brodie felt humiliated and embarrassed. After his release, Dorazo was heard saying, "You all right, buddy? We were just joking around." Brodie replied, "Yeah, yeah, I'm fine."

Defendant and Dorazo were charged in a sixteen-count indictment with two counts of second-degree official misconduct, twelve counts of fourth-degree bias intimidation, and two counts of third-degree hindering apprehension or prosecution. The hindering charges were dismissed. The court denied defendant's pretrial motion to dismiss the bias-intimidation counts based on a constitutional challenge to the bias-intimidation statute. At the conclusion of the trial, the jury acquitted defendant of all counts alleging that he falsely imprisoned or harassed Brodie either with the purpose to intimidate him or knowing that his conduct would cause Brodie to be intimidated because of his race, color, national origin, or ethnicity, N.J.S.A. 2C:16-1(a)(1), (a)(2). In addition, defendant was acquitted of the lesser-included offense of false imprisonment, N.J.S.A. 2C:13-3. Defendant, however, was found guilty of two fourth-degree bias-intimidation crimes, one for harassment by alarming conduct and the other for harassment by communication. N.J.S.A. 2C:16-1(a)(3). The jury reached its verdict based on two discrete findings: (1) the offenses were committed "under circumstances that caused Steven Brodie to be intimidated" and (2) considering the manner in which those offenses were committed, Brodie "reasonably believed" either that the offenses were "committed with a purpose to intimidate him" or that "he was selected to be the target because of his race, color, national origin, or ethnicity." N.J.S.A. 2C:16-1(a)(3). The jury also convicted defendant of official misconduct, N.J.S.A. 2C:30-2(a), based in part on the finding that he committed the crime of bias intimidation. Last, the jury convicted defendant of the petty disorderly persons' offenses of harassment by alarming conduct and harassment by communication, N.J.S.A. 2C:33-4(a), (c).

The Appellate Division reversed the bias-intimidation conviction, concluding that a conviction "based on the victim's perception" and not on the "defendant's biased intent" would violate the First Amendment of the United States Constitution. State v. Pomianek, 429 N.J. Super. 339, 343, 358-59 (App. Div. 2013). To save N.J.S.A. 2C:16-1(a)(3), the Appellate Division construed the statute in a way that conformed to the Constitution by imposing a state-of-mind requirement. Because the predicate for the conviction of misconduct in office was the bias crime,

1

the panel also reversed the misconduct conviction.  The Appellate Division remanded for retrial on the charges of bias intimidation and official misconduct.

The Supreme Court granted the State's petition for certification,  216 N.J. 363 (2013), challenging the reversal of the bias-intimidation and misconduct-in-office convictions.  The Court also granted defendant's cross-petition for certification.

**HELD**: Subsection (a)(3) of the bias-intimidation statute, N.J.S.A. 2C:16-1, fails to give adequate notice of conduct that it proscribes, is unconstitutionally vague, and violates the Due Process Clause of the Fourteenth Amendment.

1.  Under subsections (a)(1) and (a)(2) of N.J.S.A. 2C:16-1, a defendant commits bias intimidation when he acts "with a purpose to intimidate" or with "knowledge" that his conduct will intimidate a person based on an immutable characteristic, such as a person's race or color.  Unlike subsections (a)(1) and (a)(2), subsection (a)(3) focuses not on the state of mind of the accused, but rather on the victim's perception of the accused's motivation for committing the offense.  Thus, if the victim reasonably believed that the defendant committed the offense of harassment with the purpose to intimidate or target him based on his race or color, the defendant is guilty of bias intimidation.  Under subsection (a)(3), a defendant may be found guilty of bias intimidation even if he had no purpose to intimidate or knowledge that his conduct would intimidate a person because of his race or color.  The defendant is culpable for his words or conduct that led to the victim's reasonable perception even if that perception is mistaken.  (pp. 18-21)

2.  Subsection (a)(3) of N.J.S.A. 2C:16-1 is unique among bias-crime statutes in this nation.  It is the only statute that authorizes a bias-crime conviction based on the victim's perception that the defendant committed the offense with the purpose to intimidate, regardless of whether the defendant actually had the purpose to intimidate.  For a defendant to be found guilty of bias intimidation in other jurisdictions, a finding of the defendant's bias-motivated state of mind, such as malice and specific intent, is required.  (pp. 21-24)

3.  The Due Process Clause of the Fourteenth Amendment of the United States Constitution guarantees that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."  U.S. Const. amend. XIV, § 1.  A fundamental element of due process is that a law "must give fair notice of conduct that is forbidden or required."  FCC v. Fox Television Stations, Inc., ___ U.S. ___, ___ (2012).  A statute that criminalizes conduct "in terms so vague that [persons] of common intelligence must necessarily guess at its meaning . . . violates the first essential of due process of law."  Lanzetta v. New Jersey, 306 U.S. 451, 453 (1939).  Nothing in the history of the bias-intimidation statute suggests that the Legislature intended to criminalize conduct through the imposition of an amorphous code of civility or criminalize speech that was not intended to intimidate on the basis of bias.  No other bias-intimidation statute in the nation imposes criminal liability based on the victim's reasonable perceptions. N.J.S.A. 2C:16-1(a)(3) fails to set a standard that places a reasonably intelligent person on notice when he is crossing a proscribed line.  The statute criminalizes defendant's failure to apprehend the reaction that his words would have on another.  (pp. 24-33)

4.  The Court disagrees with the Appellate Division's approach, which reads into subsection (a)(3) a mens rea element that is absent from the statute.  The Legislature pointedly decided not to include such an element in subsection (a)(3), which is evident by the presence of mens rea elements in subsections (a)(1) and (a)(2).  The Appellate Division has reconfigured subsection (a)(3) to read as a mirror image of subsection (a)(1).  Rewriting the statute in that manner is not merely beyond the Court's authority but is redundant and therefore serves no purpose. The Court has no option but to strike the constitutionally defective subsection (a)(3) of N.J.S.A. 2C:16-1.  With the striking of subsection (a)(3),  New Jersey's bias-intimidation law now conforms to its original form, its  legislative history, the laws of the rest of the nation, and the United States Constitution.  (pp. 32-36)

The judgment of the Appellate Division is **REVERSED**, the bias-intimidation and misconduct-in-office convictions are dismissed, and the matter is **REMANDED** to the trial court for entry of judgment consistent with the Court's opinion.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA and SOLOMON join in JUSTICE ALBIN's opinion; JUDGE CUFF (temporarily assigned) did not participate.**

STATE OF NEW JERSEY,

     Plaintiff-Appellant
     and Cross-Respondent,

        v.

DAVID T. POMIANEK, JR.,

     Defendant-Respondent
     and Cross-Appellant.


Argued October 20, 2014 – Decided March 17, 2015

On certification to the Superior Court,
Appellate Division, whose opinion is
reported at 429 N.J. Super. 339 (App. Div.
2013).

Ronald Susswein, Assistant Attorney General,
argued the cause for appellant and cross-
respondent (John J. Hoffman, Acting Attorney
General of New Jersey, attorney).

F. Michael Daily, Jr., argued the cause for
respondent and cross-appellant.

Frank L. Corrado argued the cause for amicus
curiae American Civil Liberties Union of New
Jersey (Barry, Corrado & Grassi and
Javerbaum, Wurgaft, Hicks, Kahn, Wikstrom &
Sinins, attorneys; Mr. Corrado, Rubin M.
Sinins, Annabelle M. Steinhacker, and Edward
L. Barocas, on the brief).

Lawrence S. Lustberg argued the cause for
amicus curiae The Association of Criminal
Defense Lawyers of New Jersey (Gibbons,
attorneys; Mr. Lustberg and Amanda B.
Protess, on the brief).

Taryn L. Weiss argued the cause for amicus curiae The Rutherford Institute (Seth Grossman & Robert Loefflad, attorneys; Mr. Grossman, on the brief).

JUSTICE ALBIN delivered the opinion of the Court.

At issue in this appeal is the constitutionality of N.J.S.A. 2C:16-1(a)(3), a bias-crime statute that allows a jury to convict a defendant even when bias did not motivate the commission of the offense. Under the statute, a defendant may be convicted of bias intimidation if the victim "reasonably believed" that the defendant committed the offense on account of the victim's race. Unlike any other bias-crime statute in the country, N.J.S.A. 2C:16-1(a)(3) focuses on the victim's, not the defendant's, state of mind. The defendant's fate depends not on whether bias was the purpose for the commission of the crime but on whether the victim "reasonably believed" that was the purpose. Whether a victim reasonably believes he was targeted for a bias crime will necessarily be informed by the victim's individual experiences and distinctive cultural, historical, and familial heritage -- all of which may be unknown or unknowable to the defendant.

Although a jury found defendant David Pomianek, Jr., guilty of the disorderly persons' offense of harassment, it found him not guilty of purposely or knowingly harassing the victim

2

because of the victim's race or color.  The jury, however, convicted defendant of bias harassment on the ground that the victim either "reasonably believed that the harassment was committed with a purpose to intimidate him" or that "he was selected to be the target [of harassment] because of his race [or] color."  Based on the bias-intimidation verdict, defendant was also convicted of official misconduct.

The Appellate Division reversed the bias-harassment conviction.  It concluded that a conviction "based on the victim's perception" and not on the "defendant's biased intent" would violate the First Amendment of the United States Constitution.  State v. Pomianek, 429 N.J. Super. 339, 343, 358-59 (App. Div. 2013).  To save N.J.S.A. 2C:16-1(a)(3), the Appellate Division rewrote the statute to impose a state-of-mind requirement and remanded for a new trial on both bias harassment and official misconduct.  Id. at 343-44.

We hold that N.J.S.A. 2C:16-1(a)(3), due to its vagueness, violates the Due Process Clause of the Fourteenth Amendment.  In focusing on the victim's perception and not the defendant's intent, the statute does not give a defendant sufficient guidance or notice on how to conform to the law.  That is so because a defendant may be convicted of a bias crime even though a jury may conclude that the defendant had no intent to commit such a crime.  We are therefore constrained to reverse

3

defendant's bias-intimidation convictions as well as his official-misconduct conviction, which was predicated on the bias-crime finding. Last, we disagree with the Appellate Division that we can rewrite N.J.S.A. 2C:16-1(a)(3) to impose the same state-of-mind requirements found in N.J.S.A. 2C:16-1(a)(1). That level of judicial tinkering with legislation exceeds the bounds of our authority. In light of our resolution of this issue, we find no need to address the First Amendment issues on which the Appellate Division premised its holding.

Accordingly, we affirm in part and reverse in part the judgment of the Appellate Division.

I.

A.

Defendant David Pomianek, Jr., and co-defendant Michael Dorazo, Jr., were charged in a sixteen-count indictment with two counts of second-degree official misconduct, N.J.S.A. 2C:30-2(a); twelve counts of fourth-degree bias intimidation, N.J.S.A. 2C:16-1(a)(1), (a)(2), (a)(3)(a), and (a)(3)(b); and two counts of third-degree hindering apprehension or prosecution, N.J.S.A. 2C:29-3(b)(3).[1] The court denied defendant's pretrial motion to dismiss the bias-intimidation counts based on a constitutional

---

[1] The trial court dismissed the hindering-apprehension counts with the consent of the State.

challenge to the bias-intimidation statute. Defendant and Dorazo were granted separate trials.

Defendant was tried before a jury from November 30 to December 9, 2010. The following record was developed at trial.[2]

The events relevant to this appeal occurred on April 4, 2007, in an old garage used for storage by the Gloucester Township Department of Public Works. A number of Public Works employees were assigned to the building that day, including defendant, Dorazo, and Steven Brodie, Jr. The three men worked in the Parks and Recreations Division. Defendant and Dorazo, who are Caucasian, worked as truck drivers. Brodie, who is African-American, worked as a laborer. The hierarchy in the Parks Division is supervisor, truck driver, and laborer.

Brodie testified that a number of the employees were horsing around in the building -- throwing footballs and acting "out of control." In the building was a sixteen-foot long and eight-foot wide steel storage cage on a landing, thirteen steps above ground level. The cage was enclosed by a heavy chain-link fence on three sides and a cinder block wall on the fourth side and was secured by a sliding chain-link door with a padlock. According to Brodie, defendant was wrestling with a coworker in

---

[2] For a more detailed discussion of the facts, see State v. Pomianek, 429 N.J. Super. 339 (App. Div. 2013).

5

the storage cage.  The coworker attempted to close the cage door on defendant, but defendant managed to slip through it.

Shortly afterwards, in a ruse, Dorazo approached Brodie and told him that their supervisor needed an item from the cage. Brodie dutifully walked up the steps into the cage and asked Dorazo, "Where is it?"  Then, Dorazo shut the cage door, locking Brodie inside.

A number of Public Works Department employees began laughing, but Brodie found no humor in his predicament.  At the time, defendant was sitting on a lawnmower on the ground level of the garage.  Brodie recalled defendant saying, "Oh, you see, you throw a banana in the cage and he goes right in," which triggered more laughter among the men, including defendant and Dorazo.  Brodie considered the remark to be "racial" in nature. To Brodie, this was not a harmless caper; instead, he "was locked in a cage like an animal."  From his perspective, the line about "throwing the banana in there" was like "being called a monkey in a cage."  Brodie admitted, however, that he never heard defendant call him a monkey.

Brodie remained in the cage for three to five minutes until an employee unlocked the sliding door.  Brodie felt humiliated and embarrassed.  After his release, Brodie walked into the new Public Works building, followed by Dorazo, who said, "You all

right, buddy?  We were just joking around."  Brodie replied, "Yeah, yeah, I'm fine."

Two Parks Division employees generally corroborated Brodie's account.  One testified that defendant said, "You can throw a banana in a cage and lock a monkey in there," and the other remembered defendant calling out, "He looks like a monkey in a cage, let's throw him some bananas."  The two witnesses maintained that defendant's voice could be heard from a distance but, as noted, Brodie did not hear the reference to "monkey."

Brodie also testified to another incident involving defendant and Dorazo that he believed had racial overtones. Several months earlier, an African-American laborer, Rashaan McDaniel, was vacuuming leaves on the street with a hose attached to a truck that Dorazo was driving.  Brodie observed Dorazo give two bungee cords to defendant, who from behind began lightly "tapping" McDaniel on the shoulders with the cords. Brodie did not consider defendant's hijinks a joking matter.  In Brodie's view, defendant was making a statement about "slavery because [there was] a black man working and he's getting whipped as he's working."  No criminal charges arose from that incident.

### B.

At the conclusion of the trial, the jury acquitted defendant of all counts alleging that he falsely imprisoned or harassed Brodie either with the purpose to intimidate him or

7

knowing that his conduct would cause Brodie to be intimidated because of his race, color, national origin, or ethnicity, N.J.S.A. 2C:16-1(a)(1), (a)(2).  In addition, defendant was acquitted of the lesser-included offense of false imprisonment, N.J.S.A. 2C:13-3.

Defendant, however, was found guilty of two fourth-degree bias-intimidation crimes, one for harassment by alarming conduct and the other for harassment by communication.  N.J.S.A. 2C:16-1(a)(3).  The jury reached its verdict based on two discrete findings: (1) the offenses were committed "under circumstances that caused Steven Brodie to be intimidated" and (2) considering the manner in which those offenses were committed, Brodie "reasonably believed" either that the offenses were "committed with a purpose to intimidate him" or that "he was selected to be the target because of his race, color, national origin, or ethnicity."  N.J.S.A. 2C:16-1(a)(3).  The jury also convicted defendant of official misconduct, N.J.S.A. 2C:30-2(a), based in part on the finding that he committed the crime of bias intimidation.  The jury was charged that it could not find defendant guilty of misconduct in office unless it first determined that he had committed a crime.  The bias-intimidation convictions, therefore, were a necessary predicate to the

8

misconduct-in-office verdict.[3]  Last, the jury convicted

defendant of the petty disorderly persons' offenses of

harassment by alarming conduct and harassment by communication,

N.J.S.A. 2C:33-4(a), (c).

C.

The trial court sentenced defendant on the charge of

second-degree official misconduct to a four-year probationary

term, conditioned on defendant serving 270 days on weekends in

the county jail.[4]  The court imposed the identical sentence on

each of the bias-intimidation counts and imposed a thirty-day

term on the harassment count.  All of the sentences were made to

run concurrent to one another.  In addition, the court imposed

statutorily required fines and penalties.

Defendant appealed.

II.

A.

---

[3] At trial, the State and defendant agreed that a finding of
guilt of official misconduct required a finding that defendant
had committed a predicate crime.  As reflected on the jury
verdict sheet, the jury found defendant guilty of official
misconduct based on its determination that defendant committed
the crimes of bias intimidation.

[4] The presumptive period of incarceration for a second-degree
crime is between five and ten years.  N.J.S.A. 2C:43-6(a)(2).
The trial court exercised its discretion to impose a sentence
one degree lower pursuant to N.J.S.A. 2C:44-1(f)(2).

The Appellate Division reversed defendant's bias-intimidation convictions under N.J.S.A. 2C:16-1(a)(3) because the trial court read N.J.S.A. 2C:16-1(a)(3) as it was written and did not "charge the jury that the State was required to prove defendant's bias-motivated purpose in committing the crime." Pomianek, supra, 429 N.J. Super. at 361. Because the predicate for the conviction of misconduct in office was the bias crime, the panel also reversed the misconduct conviction. Ibid.

The panel ultimately determined "that N.J.S.A. 2C:16-1a(3) would be unconstitutional if [the statute] permitted a defendant to be convicted of a bias offense based on the victim's perception of the defendant's conduct, without requiring the State to prove defendant's biased intent in committing the underlying crime." Id. at 343. The panel reached that conclusion because the statute, if construed otherwise, would "run afoul of the First Amendment principles espoused in [Virginia v. Black, 538 U.S. 343, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003), R.A.V. v. St. Paul, 505 U.S. 377, 112 S. Ct. 2538, 120 L. Ed. 2d 305 (1992), and State v. Vawter, 136 N.J. 56, cert. denied, 513 U.S. 970, 115 S. Ct. 440, 130 L. Ed. 2d 351

10

(1994)]." Id. at 358-59. It therefore construed the statute in a way that conformed to the Constitution.[5] Id. at 343, 358-59.

The panel "reject[ed] the State's argument that N.J.S.A. 2C:16-1(a)(3) imposes criminal liability based solely on the victim's perception of the underlying crime, regardless of the defendant's intent." Id. at 358. Instead, the panel reasoned that, from the entirety of N.J.S.A. 2C:16-1's legislative history, if not from the specific wording of N.J.S.A. 2C:16-1(a)(3), it could infer that N.J.S.A. 2C:16-1(a)(3) "requires proof of intent with respect to each element of the offense[]." Ibid. Accordingly, the panel mandated that a conviction under N.J.S.A. 2C:16-1(a)(3) must include findings that the defendant (1) "intend[ed] to commit the predicate offense," (2) "intend[ed] to intimidate the victim because of his or her membership in a protected class," and (3) "intend[ed] to cause the victim to perceive the underlying offense as being bias-motivated." Ibid.

The Appellate Division affirmed defendant's convictions of harassment by communication, N.J.S.A. 2C:33-4(a), and harassment

---

[5] The Appellate Division did not address defendant's argument that N.J.S.A. 2C:16-1(a)(3) violates due process on vagueness grounds. Defendant maintained that tying a defendant's guilt to "the subjective feelings of the alleged victim" does not "'give fair notice of conduct that is forbidden,'" State v. Allen, 334 N.J. Super. 133, 137 (Law Div. 2000) (quoting State v. Lee, 96 N.J. 156, 165 (1984)).

11

by alarming conduct, N.J.S.A. 2C:33-4(c), and remanded for retrial on the charges of bias intimidation and official misconduct. Id. at 365.

B.

We granted the State's petition for certification, State v. Pomianek, 216 N.J. 363 (2013), challenging the reversal of the bias-intimidation and misconduct-in-office convictions. We also granted defendant's cross-petition for certification, limited to four issues:

> (1) whether N.J.S.A. 2C:16-1(a)(3) chills expression and/or violates due process;
>
> (2) whether the Appellate Division impermissibly applied the canon of constitutional avoidance to save N.J.S.A. 2C:16-1(a)(3) from invalidation;
>
> (3) assuming the Appellate Division was correct in interpreting N.J.S.A. 2C:16-1(a)(3) to require a showing of intent on the part of the actor, whether defendant is entitled as a matter of law to a dismissal of the bias charges on account of double jeopardy; and
>
> (4) whether a laugh can constitute a "benefit" within the meaning of N.J.S.A. 2C:[3]0-2(a).[6]
>
> [Id. at 359.]

We also granted the motions of the Rutherford Institute, the American Civil Liberties Union of New Jersey (ACLU), and the

---

[6] In light of our disposition of the first three issues, we need not address this fourth issue.

12

Association of Criminal Defense Lawyers of New Jersey (ACDL) to participate as amici curiae.

## III.

### A.

The State argues that N.J.S.A. 2C:16-1(a)(3) (subsection (a)(3)) does not run afoul of the First Amendment because it does not criminalize protected speech or expressive conduct per se, but only applies to "words that are expressed in the course of committing some other substantive crime -- one that is message-content neutral." Simply stated, the State posits that, under the First Amendment, "a purpose to cause bias intimidation is not required where the defendant's speech is communicated in the course of committing a predicate crime," and to the extent that mens rea is a constitutional prerequisite, defendant's "purpose to harass" satisfied that requirement. Although the State acknowledges that the Courts in Wisconsin v. Mitchell, 508 U.S. 476, 113 S. Ct. 2194, 124 L. Ed. 2d 436 (1993), and State v. Mortimer, 135 N.J. 517, cert. denied, 513 U.S. 970, 115 S. Ct. 440, 130 L. Ed. 2d 351 (1994), did not have "occasion to address the constitutionality of a bias intimidation statute that does not require proof of the defendant's specific intent to intimidate," the State reasons that those cases "should not be read to foreclose a bias intimidation penalty-enhancement/target selection statute that employs a different

13

culpable mental state."  In the State's view, a purposeful state of mind is not required because subsection (a)(3) merely enhances the penalty for an underlying crime that is content-neutral and does not criminalize speech.

The State rejects the notion that subsection (a)(3) is unconstitutionally vague "because it upgrades the predicate crime based on the victim's perception of the defendant's conduct."  The State insists that the victim's objectively reasonable perception of the defendant's intent to intimidate on the basis of bias satisfies the mens rea requirement and gives fair notice for due process purposes.  According to the State, the First and Fourteenth Amendments do not protect a defendant from his "subjective ignorance or indifference as a defense to bias intimidation."

Moreover, to the extent that subsection (a)(3) can be characterized as a "strict liability" statute, the State submits that it is no different than other statutes that criminalize activity based on attendant circumstances without regard to the defendant's mental state.  One such strict-liability statute, according to the State, is N.J.S.A. 2C:35-7(a), which penalizes drug distribution within 1000 feet of a school zone, even when the defendant is unaware of his location.

Last, the State claims that the Appellate Division erred in rewriting the statute to engraft a purposeful mens rea

14

requirement onto subsection (a)(3) that is identical to the one found in N.J.S.A. 2C:16-1(a)(1) (subsection (a)(1)).  Because defendant was acquitted of a subsection (a)(1) violation, the State concedes that defendant could not be retried on a newly framed statute that is the mirror image of subsection (a)(1).

B.

Defendant urges that we affirm the Appellate Division's conclusion that N.J.S.A. 2C:16-1(a)(3), as written, violates free-speech principles by chilling expression on disfavored topics.  Alternatively, defendant argues that N.J.S.A. 2C:16-1(a)(3), by focusing on what a "reasonable" victim believes is the defendant's motivation rather than on what the defendant actually intends, fails to give a person of reasonable intelligence fair notice of the conduct that is forbidden. Defendant maintains that the statute offends the Due Process Clause of the Fourteenth Amendment on vagueness grounds because "[a] defendant should not be obliged to guess whether his conduct is criminal," quoting State v. Lee, 96 N.J. 156, 165-66 (1984).  Defendant also contends that unlike such strict-liability statutes as the one enhancing criminal penalties for drug distribution within 1000 feet of a school-zone, where the boundary of a school zone is an objective fact, N.J.S.A. 2C:35-7(a), subsection (a)(3) criminalizes a defendant's conduct based on the victim's perception.

15

Defendant submits that the Appellate Division erred by invoking the canon of constitutional avoidance to rewrite the statute. The canon instructs courts to avoid construing a statute in a way that would lead to its invalidation. That canon does not apply, according to defendant, because N.J.S.A. 2C:16-1(a)(3) is not reasonably susceptible to alternate interpretations. Defendant also posits that prosecuting him under the reconstructed statute, which mirrors N.J.S.A. 2C:16-1(a)(3), would violate double jeopardy principles because he was acquitted of a subsection (a)(1) offense.

Additionally, defendant submits that under the newly constructed provision, a conviction under subsection (a)(3) cannot be obtained without proof of all of the elements for a conviction under subsection (a)(1). Thus, based on defendant's acquittal of the charge under subsection (a)(1), defendant cannot be retried for a violation of subsection (a)(3).

C.

Amici, the Rutherford Institute, ACLU, and ACDL, collectively and individually advance arguments similar to those made by defendant. Amici contend that N.J.S.A. 2C:16-1(a)(3) cannot be reconciled with bedrock principles undergirding the First Amendment because defendant's conviction was based on statements that were deemed offensive and insensitive by the victim -- and perhaps by the jury -- and not based on

16

defendant's subjective motivations. In amici's view, the jury rested its verdict on the victim's perception of defendant's "politically incorrect" remarks, given that "the jury rejected the charge that [defendant] was actually motivated by improper bias."

Amici echo defendant's due process argument that N.J.S.A. 2C:16-1(a)(3) does not give fair notice of where the line is drawn for conduct that is proscribed because the victim's "belief will depend wholly upon the thoughts, memories or experiences of which [the defendant] almost certainly cannot know." Amici note that one of the purposes of the traditional scienter requirement is to give clear notice of acts that are criminal in nature. That notice is absent when criminality depends on whether the victim reasonably believes he was targeted on the basis of bias rather than on the defendant's subjective intent. Amici emphasize that a defendant "cannot control and may not even be aware of" the victim's beliefs and that "there is a real risk that bias will be reasonably perceived by a victim even where it does not exist."

IV.

The primary issue before us is one of constitutional interpretation -- whether subsection (a)(3) of the bias-intimidation statute, N.J.S.A. 2C:16-1, violates the free speech guarantee of the First Amendment and the Due Process Clause of

17

the Fourteenth Amendment of the United States Constitution. Because the issue is purely legal in nature, we owe no deference to either the trial court's or Appellate Division's conclusions of law. State v. Vargas, 213 N.J. 301, 327 (2013); see also Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378 (1995) (noting that "interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference"). Our review therefore is de novo. Balsamides v. Protameen Chems., 160 N.J. 352, 372 (1999).

We begin with a discussion of the text and history of the bias-intimidation statute, N.J.S.A. 2C:16-1, and then examine whether subsection (a)(3) of N.J.S.A. 2C:16-1 satisfies the due process demands of the Fourteenth Amendment. We must answer whether the line separating lawful from criminal conduct in subsection (a)(3) is so vague that a reasonable person would not have fair notice when that line is crossed. The answer raises interrelated First Amendment concerns. Nevertheless, only if subsection (a)(3) can survive due process scrutiny is it necessary to engage in a First Amendment analysis.

We now turn to the text of the bias-intimidation statute.

V.

A.

N.J.S.A. 2C:16-1 provides:

18

a.  A person is guilty of the crime of bias intimidation if he commits, attempts to commit, conspires with another to commit, or threatens the immediate commission of an offense specified in chapters 11 through 18 of Title 2C of the New Jersey Statutes; N.J.S. 2C:33-4; N.J.S. 2C:39-3; N.J.S. 2C:39-4 or N.J.S. 2C:39-5,

(1)  with a purpose to intimidate an individual or group of individuals because of race, color, religion, gender, disability, sexual orientation, gender identity or expression, national origin, or ethnicity; or

(2)  knowing that the conduct constituting the offense would cause an individual or group of individuals to be intimidated because of race, color, religion, gender, disability, sexual orientation, gender identity or expression, national origin, or ethnicity; or

(3)  under circumstances that caused any victim of the underlying offense to be intimidated and the victim, considering the manner in which the offense was committed, reasonably believed either that (a) the offense was committed with a purpose to intimidate the victim or any person or entity in whose welfare the victim is interested because of race, color, religion, gender, disability, sexual orientation, gender identity or expression, national origin, or ethnicity, or (b) the victim or the victim's property was selected to be the target of the offense because of the victim's race, color, religion, gender, disability, sexual orientation, gender identity or expression, national origin, or ethnicity.

19

Generally, bias intimidation is punishable by a sentence one degree higher than the underlying crime that forms the basis for the bias-intimidation charge. N.J.S.A. 2C:16-1(c). In this case, the underlying charges were the petty disorderly persons' offenses of harassment by communication and alarming conduct. N.J.S.A. 2C:33-4(a), (c). Harassment is punishable by a sentence not to exceed thirty days' imprisonment. N.J.S.A. 2C:43-8. However, when the victim of the harassment is subjected to bias intimidation, a fourth-degree crime has been committed, N.J.S.A. 2C:16-1(c), and the crime is punishable by a sentence not to exceed eighteen months' imprisonment, N.J.S.A. 2C:43-6(a)(4).

Under subsections (a)(1) and (a)(2) of N.J.S.A. 2C:16-1, a defendant commits bias intimidation when he acts "with a purpose to intimidate" or with "knowledge" that his conduct will intimidate a person based on an immutable characteristic, such as a person's race or color. Those state-of-mind requirements are the traditional means of determining criminal liability. United States v. Bailey, 444 U.S. 394, 402-04, 100 S. Ct. 624, 630-31, 62 L. Ed. 2d 575, 586-87 (1980). Unlike subsections (a)(1) and (a)(2), subsection (a)(3) focuses not on the state of mind of the accused, but rather on the victim's perception of the accused's motivation for committing the offense. Thus, if the victim reasonably believed that the defendant committed the

20

offense of harassment with the purpose to intimidate or target him based on his race or color, the defendant is guilty of bias intimidation.  N.J.S.A. 2C:16-1(a)(3).  Under subsection (a)(3), a defendant may be found guilty of bias intimidation even if he had no purpose to intimidate or knowledge that his conduct would intimidate a person because of his race or color.  In other words, an innocent state of mind is not a defense to a subsection (a)(3) prosecution; the defendant is culpable for his words or conduct that led to the victim's reasonable perception even if that perception is mistaken.

B.

Subsection (a)(3) was not part of New Jersey's original "hate crime" law.  The original version provided for an extended term of imprisonment if, at sentencing, the trial judge found by a preponderance of evidence that "[t]he defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity."  L. 1995, c. 211, § 3 (emphasis added) (codified as amended at N.J.S.A. 2C:44-3(e), invalidated by Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)).  The United States Supreme Court struck down that statute because it allowed the trial court to impose a sentence greater than the one authorized by the jury verdict in contravention of the Sixth Amendment right

21

to trial by jury.  Apprendi, supra, 530 U.S. at 490, 120 S. Ct. at 2362-63, 147 L. Ed. 2d at 455.  Apprendi made clear that bias motivation in the sentence-enhancement provision, N.J.S.A. 2C:44-3(e), was an element of the offense, disguised as a sentencing factor.  Apprendi, supra, 530 U.S. at 490, 120 S. Ct. at 2362-63, 147 L. Ed. 2d at 455.  Notably, N.J.S.A. 2C:44-3(e) hinged a sentence enhancement on a defendant's intent to intimidate, not on the victim's perception of defendant's motivation.

In response to Apprendi, the Legislature enacted N.J.S.A. 2C:16-1, the current bias-intimidation statute.  L. 2001, c. 443, § 1.  The original bill sponsored in the Senate corrected the constitutional defect in N.J.S.A. 2C:44-3(e) and provided that the purpose to intimidate on the basis of bias would be treated as an element of the offense and tried to the jury.  S. 1897, 209th Leg. (2000).  Later, a substitute bill was introduced that included the present version of section (a)(3), which unlike sections (a)(1) and (a)(2), contains no scienter requirement.  S. Comm. Substitute for S. 1897, 209th Leg. (2000).  The legislative history gives no insight into the Legislature's reason for including subsection (a)(3).  The Senate Judiciary Committee and Assembly Judiciary Committee Statements to the substitute bill (Senate Bill No. 1897), enacted into law as N.J.S.A. 2C:16-1, explained that a "person

22

would be guilty of bias intimidation if the person commits any crime listed in the bill with a purpose to intimidate an individual or group of individuals because of race, color, religion, gender, handicap, sexual orientation or ethnicity." Assemb. Judiciary Comm. Statement to S. No. 1897, 209th Leg. (May 7, 2001) (emphasis added); S. Judiciary Comm. Statement to S. No. 1897, 209th Leg. (Dec. 14, 2000) (emphasis added).  In those Statements, no mention is made of the provision that allows for a bias-crime conviction based on a victim's reasonable belief that a defendant possessed a purpose to commit bias intimidation, even if the defendant had no such purpose.

Subsection (a)(3) of N.J.S.A. 2C:16-1 is unique among bias-crime statutes in this nation.  It is the only statute that authorizes a bias-crime conviction based on the victim's perception that the defendant committed the offense with the purpose to intimidate, regardless of whether the defendant actually had the purpose to intimidate.  See Alison M. Smith & Cassandra L. Foley, Cong. Research Serv., State Statutes Governing Hate Crimes (2010).  For a defendant to be found guilty of bias intimidation in other jurisdictions, a finding of the defendant's bias-motivated state of mind, such as malice and specific intent, is required.  See, e.g., Colo. Rev. Stat. § 18-9-121(2) (2014) ("A person commits a bias-motivated crime if, with the intent to intimidate or harass another person because

23

of that person's actual or perceived race, color, religion, ancestry, national origin, physical or mental disability, or sexual orientation . . . ."); Idaho Code Ann. § 18-7902 (2014) ("It shall be unlawful for any person, maliciously and with the specific intent to intimidate or harass another person because of that person's race, color, religion, ancestry, or national origin . . . ."); Okla. Stat. tit. 21, § 850 (2013) ("No person shall maliciously and with the specific intent to intimidate or harass another person because of that person's race, color, religion, ancestry, national origin or disability . . . ."). Those out-of-state statutes are comparable to subsections (a)(1) and (a)(2) of N.J.S.A. 2C:16-1.

With this backdrop, we next address whether subsection (a)(3) of N.J.S.A. 2C:16-1 passes muster under the Due Process Clause of the Fourteenth Amendment.

VI.

A.

The Due Process Clause of the Fourteenth Amendment of the United States Constitution guarantees that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. A fundamental element of due process is that a law "must give fair notice of conduct that is forbidden or required." FCC v. Fox Television Stations, Inc., ___ U.S. ___, ___, 132 S. Ct. 2307,

24

2317, 183 L. Ed. 2d 234, 245 (2012). "A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited . . . ." United States v. Williams, 553 U.S. 285, 304, 128 S. Ct. 1830, 1845, 170 L. Ed. 2d 650, 669 (2008). A person should be on notice that he is engaged in wrongdoing before he "is brought to the bar of justice for condemnation in a criminal case." Lambert v. California, 355 U.S. 225, 228, 78 S. Ct. 240, 243, 2 L. Ed. 2d 228, 231 (1957).

A statute that criminalizes conduct "in terms so vague that [persons] of common intelligence must necessarily guess at its meaning . . . violates the first essential of due process of law." Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S. Ct. 618, 619, 83 L. Ed. 888, 890 (1939) (internal quotation marks omitted). The inherent vice in vague laws is that they do not draw clear lines separating criminal from lawful conduct. See Lee, supra, 96 N.J. at 165 (noting that "vagueness test demands that a law be sufficiently clear and precise so that people are given notice and adequate warning of the law's reach") (internal quotation marks omitted). A penal statute should not be "a trap" for the unwary. Id. at 166.

In Mortimer, supra, we ultimately rejected a due process vagueness challenge to the entirety of N.J.S.A. 2C:33-4(d)

25

(repealed by L. 2001, c. 443, § 3), which classified as a fourth-degree crime harassment that is motivated by bias.[7]  135 N.J. at 535.  N.J.S.A. 2C:33-4(d) criminalized the defendant's conduct if the defendant "acted, at least in part, with ill will, hatred or bias toward, and with a purpose to intimidate, an individual or group of individuals because of race, color, religion, sexual orientation or ethnicity."  We struck from the statute the language -- "at least in part with ill will, hatred or bias toward" -- on vagueness grounds because those words failed to give sufficient notice of "what that part of the statute proscribe[d]."  Mortimer, supra, 135 N.J. at 533.  The reconstructed statute read as follows:  "A person commits a crime of the fourth degree if in committing an offense under this section, he acted . . . with a purpose to intimidate an individual or group of individuals because of race, color, religion, sexual orientation or ethnicity."  Id. at 534.  The reconstructed statute survived due process scrutiny because the statute's mens rea -- "with purpose to intimidate" -- penalizes a defendant who "selects a victim because of the victim's group identification or inherent characteristics."  Id. at 534-35 (emphasis added).  Although we upheld "subsection d, thereby permitting an inquiry into a person's motive to commit one of

---

[7] N.J.S.A. 2C:33-4(d) was repealed and replaced by N.J.S.A. 2C:16-1.

26

the predicate offenses, we caution[ed] that our decision [was] not an invitation to inquire into an actor's beliefs, expressions, and associations generally."  Id. at 538 (emphasis added).

The United States Supreme Court in Mitchell, supra, likewise rejected a constitutional challenge to a statute that provided for a penalty enhancement when the defendant "intentionally" committed certain crimes because of an immutable characteristic, such as race, religion, or color.  508 U.S. at 480, 490, 113 S. Ct. at 2197, 2202, 124 L. Ed. 2d at 442, 448. The statute passed muster under the First and Fourteenth Amendments because a defendant is not punished because of his "bigoted beliefs" but because of his "discriminatory motive." Id. at 485, 113 S. Ct. at 2199, 124 L. Ed. 2d at 445.  The Court recognized that "bias-motivated crimes are more likely to provoke retaliatory crimes, inflict distinct emotional harms on their victims, and incite community unrest."  Id. at 488, 113 S. Ct. at 2201, 124 L. Ed. 2d at 447.

What distinguishes the statutes upheld in Mortimer and Mitchell from subsection (a)(3) of N.J.S.A. 2C:16-1 is that in those statutes the defendant is penalized for intentionally targeting the victim based on an immutable characteristic, such as race or color, whereas subsection (a)(3) penalizes the defendant even if he has no motive to discriminate, so long as

27

the victim reasonably believed he acted with a discriminatory motive.

While the State is correct that our upholding of the constitutionality of the bias-harassment statute in Mortimer does not ineluctably lead to the conclusion that subsection (a)(3) is unconstitutional, the reasoning in Mortimer lends no support to the State's argument. Indeed, the concern we expressed in Mortimer, supra, 135 N.J. at 538 -- the need to avoid "inquiry into an actor's beliefs, expressions, and associations generally" -- may be realized when the focus is on the victim's reasonable perceptions as opposed to the defendant's actual motivation. A bigot who harasses a neighbor for no reason other than that the neighbor is playing music too loudly in the evening may be convicted of bias intimidation under subsection (a)(3) if the neighbor reasonably believes, under the circumstances, that the bigot acted based on his racial, religious, or nativist sentiments. That is because subsection (a)(3) does not require that a defendant have a bias motive to be convicted of bias intimidation. Significantly, we found that the statute in Mortimer was "rationally related to [a] legitimate State interest" because criminalizing "bias-motivated harassment" advanced the goal of deterrence. Id. at 537. The goal of deterrence surely is diminished when a person has no motive to commit a bias crime and is unaware that his

28

conduct or speech has crossed over into the realm of criminal misconduct.

The State compares subsection (a)(3) of N.J.S.A. 2C:16-1 to other strict-liability statutes, but statutes without scienter requirements have due process limitations. A strict-liability statute will violate due process if it "offend[s] fundamental notions of justice." State v. Maldonado, 137 N.J. 536, 555 (1994). The due process bar to a strict-liability statute applies "when the underlying conduct is so passive, so unworthy of blame, that the persons violating the proscription would have no notice that they were breaking the law." Ibid. As with vague statutes, notice is a key component to a due process review of strict-liability statutes. Strict-liability statutes that have withstood constitutional scrutiny typically involve an element of an offense that involves an ascertainable fact of which a defendant can make himself aware to avoid criminal liability.

For example, N.J.S.A. 2C:35-7(a), a statute criminalizing the distribution of drugs within 1000 feet of a school, is constitutional without requiring proof that the defendant knew that he was within the prohibited zone. United States v. Holland, 810 F.2d 1215, 1224 (D.C. Cir. 1987). Significantly, a defendant has the ability to determine his location in relationship to a school. In State v. Fearick, 69 N.J. 32, 38

29

(1976), we rejected the constitutional challenge to a statute that imposed a mandatory jail sentence on a defendant who was involved in an accident while driving with a suspended license. The statute did not accord defendant a defense based on his lack of fault in causing the accident. Id. at 35-36. Notably, a defendant is on statutory notice that if he drives while suspended, the happenstance of an accident, even if not his fault, would subject him to a harsh penalty. In Maldonado, supra, 137 N.J. at 554-55, we upheld the constitutionality of a statute that imposed strict liability on a drug distributor whose drugs proximately caused death. The defendant was on notice of the inherent dangers of drugs and their potential to cause death.[8] Id. at 556.

Unlike the defendants in those cases involving strict-liability statutes, defendant here could not readily inform

---

[8] The State compares N.J.S.A. 2C:16-1(a)(3) to the stalking statute, N.J.S.A. 2C:12-10, which we addressed in State v. Gandhi, 201 N.J. 161 (2010). Unlike N.J.S.A. 2C:16-1(a)(3), the stalking statute has a mens rea component. The stalking statute provides that a defendant is guilty of a crime "if he purposefully or knowingly engages in a course of conduct directed at a specific person that would cause a reasonable person to fear for his safety or the safety of a third person or suffer other emotional distress." N.J.S.A. 2C:12-10(b) (emphasis added). In Gandhi, supra, we determined only that the Legislature did not intend by the statute's wording to impose a requirement on the prosecution to prove that the defendant purposefully or knowingly "cause[d] a reasonable victim to fear bodily injury or death." 201 N.J. at 187. Our task in Gandhi was statutory interpretation and not constitutional adjudication. Id. at 187-88.

himself of a fact and, armed with that knowledge, take measures to avoid criminal liability. Defendant was guilty of a crime under N.J.S.A. 2C:16-1(a)(3) even if he had no intent to commit bias intimidation, so long as the victim reasonably believed that defendant targeted him on account of his race or color. Of course, a victim's reasonable belief about whether he has been subjected to bias may well depend on the victim's personal experiences, cultural or religious upbringing and heritage, and reaction to language that is a flashpoint to persons of his race, religion, or nationality. A tone-deaf defendant may intend no bias in the use of crude or insensitive language, and yet a victim may reasonably perceive animus. The defendant may be wholly unaware of the victim's perspective, due to a lack of understanding of the emotional triggers to which a reasonable person of that race, religion, or nationality would react. Nothing in the history of the bias-intimidation statute suggests that the Legislature intended to criminalize conduct through the imposition of an amorphous code of civility or criminalize speech that was not intended to intimidate on the basis of bias. It bears repeating that no other bias-intimidation statute in the nation imposes criminal liability based on the victim's reasonable perceptions.

Last, the State's characterization of N.J.S.A. 2C:16-1(a)(3) as a penalty-enhancement/target-selection statute does

31

not change the constitutional analysis. The pre-Apprendi hate-crime law was described as a "sentence enhancer," yet that categorization did not alter the fact that the sentencing court, not a jury, was determining an element of the offense in violation of the defendant's Sixth Amendment right to a jury trial. Apprendi, supra, 530 U.S. at 490, 495, 120 S. Ct. at 2362-63, 2365, 147 L. Ed. 2d at 455, 458. How we label the statute is not as important as how the statute operates and whether it offends the Constitution.

N.J.S.A. 2C:16-1(a)(3) fails to set a standard that places a reasonably intelligent person on notice when he is crossing a proscribed line. That is so because guilt may depend on facts beyond the knowledge of the defendant or not readily ascertainable by him.

B.

Indeed, the facts of this case illustrate how subsection (a)(3) exceeds its constitutional bounds. After Dorazo lured Brodie into the storage cage in the Public Works garage and locked the cage door, defendant remarked -- according to Brodie -- "Oh, you see, you throw a banana in the cage and he goes right in." Although the jury concluded that defendant acted with the purpose to harass Brodie, it rejected the State's theory that defendant acted with the purpose to intimidate or target Brodie on account of his race or color. However, because

32

Brodie, an African-American victim, reasonably believed under the circumstances that defendant's words were racially motivated -- even though the jury concluded they were not -- defendant was convicted of bias intimidation.

Subsection (a)(3) required defendant to predict that the reasonable African-American would consider defendant's words as constituting the motive for a crime, even though he had no such motive. Persons who belong to specific ethnic, religious, or racial groups that have been historically exposed to bigotry will be particularly sensitive to language that is deemed offensive, based on their communal and individual experiences. But defendant did not possess the communal and individual experiences of the reasonable victim in this case. Subsection (a)(3) criminalizes defendant's failure to apprehend the reaction that his words would have on another. Here, subsection (a)(3) penalizes, as a bias crime, coarse and insensitive language that may have been uttered as part of a terrible prank.

VII.

A.

We disagree with the Appellate Division's approach, which reads into subsection (a)(3) a mens rea element that is absent from the statute. The Legislature pointedly decided not to include such an element in subsection (a)(3), which is evident by the presence of mens rea elements in subsections (a)(1) and

33

(a)(2).  We must read the statute as it is written.  DiProspero
v. Penn, 183 N.J. 477, 492 (2005).  The doctrine of
constitutional avoidance comes into play when a statute is
susceptible to two reasonable interpretations, one
constitutional and one not.  State v. Johnson, 166 N.J. 523, 534
(2001).  We then assume that the Legislature would want us to
construe the statute in a way that conforms to the Constitution.
Id. at 540-41.  Here, there is no doubt about the meaning of
subsection (a)(3), however we parse the statutory language.

Although the parties strongly disagree on whether
subsection (a)(3) is constitutional, they concur that the
Appellate Division erred by rewriting the statute to impose a
mens rea element almost identical to the one in subsection
(a)(1).  The Appellate Division, moreover, has performed not
minor judicial surgery to save a statutory provision, but a
judicial transplant.  The Appellate Division has reconfigured
subsection (a)(3) to read as a mirror image of subsection
(a)(1).  Rewriting the statute in that manner is not merely
beyond our authority but is redundant and therefore serves no
purpose.  Moreover, a remand for a new trial on the basis of the
newly constructed statute raises serious double jeopardy
concerns because defendant was acquitted of the subsection
(a)(1) charge.  We have no option but to strike the

34

constitutionally defective subsection (a)(3) of N.J.S.A. 2C:16-1.

### B.

In summary, we conclude that because N.J.S.A. 2C:16-1(a)(3) fails to give adequate notice of conduct that it proscribes, the statute is unconstitutionally vague and violates notions of due process protected by the Fourteenth Amendment. Defendant was convicted not based on what he was thinking but rather on his failure to appreciate what the victim was thinking. In light of our disposition, we need not address whether N.J.S.A. 2C:16-1(a)(3) is also violative of the First Amendment.

It bears emphasizing that the twin pillars of the bias-intimidation statute -- subsections (a)(1) and (a)(2) of N.J.S.A. 2C:16-1 -- still stand. A defendant is prohibited from acting with the purpose to commit bias intimidation or with knowledge that his conduct constitutes bias intimidation. With the striking of subsection (a)(3), New Jersey's bias-intimidation law now conforms to its original form, the statute's explanatory statement contained in the legislative history, the laws of the rest of the nation, and the United States Constitution.

### VIII.

For the reasons expressed, we reverse the judgment of the Appellate Division, which reconfigured N.J.S.A. 2C:16-1(a)(3) to

35

impose a mens rea requirement.  We hold that N.J.S.A. 2C:16-1(a)(3) is sufficiently vague that a person of reasonable intelligence cannot discern the dividing line between criminal and lawful behavior.  A line that moves based on the victim's perceptions, however reasonable and perhaps mistaken, does not give adequate notice of what is prohibited and therefore violates the Due Process Clause of the Fourteenth Amendment.  To rewrite the statute, as did the Appellate Division, exceeds the scope of our judicial authority.  We therefore are constrained to dismiss the subsection (a)(3) bias-intimidation convictions.  We also dismiss the misconduct-in-office conviction, which was premised on a finding of bias intimidation under N.J.S.A. 2C:16-1(a)(3).

We remand to the trial court for entry of judgment consistent with this opinion.

CHIEF JUSTICE RABNER, and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE ABLIN's opinion. JUDGE CUFF (temporarily assigned) did not participate.

SUPREME COURT OF NEW JERSEY

NO.    A-32/33                    SEPTEMBER TERM 2013

ON CERTIFICATION TO        Appellate Division, Superior Court


STATE OF NEW JERSEY,

      Plaintiff-Appellant
      And Cross-Respondent,

          v.

DAVID T. POMIANEK, JR.,

      Defendant-Respondent
      And Cross-Appellant.


DECIDED           March 17, 2015
              Chief Justice Rabner         PRESIDING

OPINION BY          Justice Albin

CONCURRING/DISSENTING OPINIONS BY

DISSENTING OPINION BY

| CHECKLIST | REVERSE/ REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | ------------------------ | -------------------- |
| TOTALS | 6 | |