**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4258-18

SUSAN GIGLIOTTI,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted February 3, 2021 – Decided  February 24, 2021

Before Judges Whipple and Firko.

On appeal from the New Jersey Department of Corrections.

Helmer, Conley & Kasselman, PA, attorneys for appellant (Patricia B. Quelch, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Kimberly G. Williams, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Susan Gigliotti appeals from a March 18, 2019, final decision of the New Jersey Department of Corrections (DOC) finding her guilty of prohibited act *.008, abuse and cruelty to animals, in violation of N.J.A.C. 10A:4-4.1(a).  We affirm.

I.

Appellant is incarcerated at the Edna Mahan Correctional Facility (EMCF) for women and is serving a life sentence for murder, unlawful possession of a weapon, conspiracy, and receipt of stolen property.  Since 2015, she has participated in Puppies Behind Bars (PBB), a program that trains prison inmates to raise service dogs for wounded war veterans, first responders, and explosive-detection dogs for law enforcement.[1]  Previously, appellant raised and

---

[1] According to the organization's website, PBB has been working with inmates at EMCF since April 2001 and operates in six correctional facilities in New York and New Jersey.  Participating inmates must undergo a selection process before being accepted into the program.  The puppies enter the correctional facility at eight-weeks old and live with their inmate "puppy-raiser" for approximately twenty-four months.  The puppy-raisers are responsible for the puppy's training, nurturing, basic medical care, and grooming.  Once per week, PBB staff go to each correctional facility for a full day of teaching classes.  PUPPIES BEHIND BARS, http://www.puppiesbehindbars.com/mission-history (last visited January 20, 2021); see also Cheryl Robinson, Puppies Behind Bars Program Provides Service Dogs for Veterans, First Responders, FORBES (Jun. 18, 2020, 8:40 a.m.) https://www.forbes.com/sites/cherylrobinson/2020/06/18/puppies-behind-bars-program-provides-service-dogs-for-veterans-first-responders/?sh=4890a0025b85.

A-4258-18

trained two puppies that went on to serve as explosive-detection canines with the Bureau of Alcohol, Tobacco, Firearms, and Explosives and the United States Parks Police.

On October 29, 2018, appellant was working with a five-and-one-half month old puppy, Kali. At approximately 9:55 a.m., appellant and the other PBB participants were walking their puppies around the compound to the basement of the sewing unit, where the puppies would engage in specialized scent training under the supervision of two PBB trainers, Janet Brady and Joan Nuemann. According to appellant, Kali lunged while on leash, and she corrected the puppy by issuing the commands "come" and "sit." Appellant contends she finished the class and returned to her unit, only to be informed that Kali was being taken away from her, and she was being moved to administrative segregation.

Senior Corrections Police Officer Phillip Stratton and Sergeant Kristopher Applegate stated they observed appellant strike Kali on the face with the handle of the leash while walking the puppy. The officers witnessed the event while on a break from a training class taking place in EMCF's chapel. Both officers completed incident reports around 12:00 p.m. on October 29, 2018. On October 30, 2018, appellant was served with a *.008 disciplinary charge, and the matter

was referred to a Hearing Officer for further action. Appellant pled not guilty to the charge and requested counsel substitute.

The hearing was scheduled to take place on November 2, 2018, but was postponed at appellant's request to gather witness statements and pose confrontation questions to staff. The rescheduled hearing took place on November 27 and 29, 2018. Numerous inmates submitted statements relating their observations of the incident. Appellant's request for a polygraph was denied. The Administrator ruled that "[a]ny issue of credibility can be determined by the Hearing Officer at the requested hearing."

Appellant asserts that counsel substitute was not permitted to speak at the hearing beyond requesting the charge be dismissed because of excessive delay in conducting the hearing. She also claims that despite Officer Stratton and Sergeant Applegate being present at the hearing,[2] counsel substitute was not permitted to cross-examine them regarding their reports. Therefore, appellant argues she "was forced to rely totally upon her submitted written statement."

The Hearing Officer found appellant guilty of prohibited act *.008 and sanctioned her to 180 days' administrative segregation, 365 days' loss of

---

[2] There is an inconsistency in appellant's brief as to who was present at the hearing. Initially, she states both officers were present but later indicates "[a]t least one of the officers was present and available."

commutation time, thirty days' loss of J-Pay, thirty days' loss of canteen, thirty days' loss of recreational privileges, and recommended a job change. Appellant administratively appealed the decision. The Superintendent modified the decision and suspended 180 days of administrative segregation, the 180 days' loss of commutation time, and denied the Hearing Officer's sanctions of thirty days' loss of canteen, thirty days' loss of J-Pay, and thirty days' loss of recreational privileges.

On appeal, appellant contends she was denied due process, the regulation at issue is void for vagueness, the investigation and report prepared were deficient, the DOC did not meet its burden of proof, and the sanctions were excessive.

## II.

Our review of agency actions is limited. In re Hermann, 192 N.J. 19, 27 (2007). "Decisions of administrative agencies carry with them a presumption of reasonableness." Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 191 (App. Div. 2010). Therefore, we will not overturn an agency's decision unless an appellant makes a "clear showing that [the decision] is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Hermann, 192 N.J. at 27-28.

A-4258-18

When determining whether an agency's decision was arbitrary, capricious, or unreasonable, an appellate court must determine whether: (1) the agency followed the law; (2) the record contains substantial evidence sufficient to support the agency's findings; and (3) "in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors." In re Stallworth, 208 N.J. 182, 194 (2011) (quoting In re Carter, 191 N.J. 474, 482-83 (2007)). Moreover, we "must determine 'whether the findings made could reasonably have been reached on sufficient credible evidence presented in the record,' considering 'the proofs as a whole,' with due regard to . . . the agency's expertise where such expertise is a pertinent factor." Williams v. Dep't of Corr., 330 N.J. Super. 197, 203 (App. Div. 2000) (quoting Mayflower Sec. v. Bureau of Sec., 64 N.J. 85, 92-93 (1973)).

"A finding of guilt at a disciplinary hearing shall be based upon substantial evidence that the inmate has committed a prohibited act." N.J.A.C. 10A:4-9.15(a). "Substantial evidence" is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Figueroa, 414 N.J. Super. at 192 (quoting In re Pub. Serv. Elec. & Gas Co., 35 N.J. 358, 376 (1961)). In other words, it is "evidence furnishing a reasonable basis for the agency's action."

Ibid. (quoting McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 562 (App. Div. 2002)).

With respect to review of inmate discipline imposed by the DOC, an appellate court "cannot be relegated to a mere rubber-stamp of agency action." Williams, 330 N.J. Super. at 204. Consequently, we "insist that the agency disclose its reasons for any decision, even those based upon expertise, so that a proper, searching, and careful review by [the Appellate Division] may be undertaken." Malacow v. N.J. Dep't of Corr., 457 N.J. Super. 87, 93 (App. Div. 2018) (quoting Balagaun v. N.J. Dep't of Corr., 361 N.J. Super. 199, 203 (App. Div. 2003)). We will then "engage in a careful and principled consideration of the agency record and findings." Williams, 330 N.J. Super. at 204 (internal citation omitted).

While "an appellate court does not substitute its judgment of the facts for that of an administrative agency," Campbell v. N.J. Racing Comm'n, 169 N.J. 579, 587 (2001), "if the agency's finding 'is clearly a mistaken one and so plainly unwarranted that the interests of justice demand intervention and correction, then, . . . [the appellate court] should appraise the record as if it were deciding the matter at inception and make its own findings and conclusions.'" Id. at 587-

88 (quoting Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 588 (1988) (alteration in original)).

Appellate review of disciplinary sanctions is similarly deferential. Hermann, 192 N.J. at 28. "A reviewing court 'may not substitute its own judgment for the agency's, even though the court might have reached a different result.'" Stallworth, 208 N.J. at 194 (quoting Carter, 191 N.J. at 483). Discipline is only reviewed to determine "whether the 'punishment is so disproportionate to the offense, in the light of all of the circumstances, as to be shocking to one's sense of fairness.'" Id. at 195 (quoting Carter, 191 N.J. at 484).

Appellant argues that she was deprived of her due process rights because she "did not receive the swift adjudication envisioned by DOC regulations." Because appellant spent thirty-one days in prehearing disciplinary housing, she contends her ability to prepare her defense was prejudiced, and the Hearing Officer could have dismissed the charge "due to the extreme violation of time limits." In addition, appellant asserts she was denied the opportunity "to call witnesses on her own behalf and to present evidence to be considered by the [H]earing [O]fficer."

"In New Jersey, the administrative rules and regulations that govern the fulfillment of due-process rights for prisoners are balanced against the needs and

objectives of the prison." McDonald v. Pinchak, 139 N.J. 188, 194 (1995). Because disciplinary proceedings are not criminal prosecutions, prisoners are entitled to only certain limited protections, rather than the "full panoply of rights" afforded to criminal defendants. Jenkins v. Fauver, 108 N.J. 239, 248-49 (1987) (quoting Wolff v. McDonnell, 418 U.S. 539, 556-57 (1974)); Avant v. Clifford, 67 N.J. 496, 522 (1975). Our Court has held that those protections include:

> (1) written notice of the charges, provided at least twenty-four hours before the hearing, so the inmate can prepare a defense; (2) an impartial tribunal, consisting of either one [Hearing Officer] or a three-member adjustment committee; (3) the assistance of a counsel substitute if the inmate is illiterate or unable to collect or present evidence; (4) the right to call witnesses and present documentary evidence, provided it is not "unduly hazardous to institutional safety or correctional goals"; (5) the right to confront and cross-examine adverse witnesses; and (6) quoting the Standards on the Inmate Discipline Program section 254.283, "a written statement of the fact-findings is given to the inmate by the hearing officer or by the adjustment committee chairman as to the evidence relied upon, decision and the reason for the disciplinary action taken unless such disclosure would jeopardize institutional security."
>
> [Malacow, 457 N.J. Super. at 93-94 (quoting Avant, 67 N.J. at 525-33); see also McDonald, 139 N.J. at 194-95.]

Appellant first argues that the hearing's delay violated her due process rights. An inmate's rights in a disciplinary proceeding are codified at N.J.A.C. 10A:4-9.1 to -9.28. Our Court has stated these regulations "strike the proper balance between the security concerns of the prison, the need for swift and fair discipline, and the due process rights of the inmates." McDonald, 139 N.J. at 202.

With respect to the timing of a disciplinary hearing, the regulations provide in relevant part:

> (b) The inmate shall be entitled to a hearing within seven calendar days of the alleged violation, including weekends and holidays, unless such hearing is prevented by exceptional circumstances, unavoidable delays or reasonable postponements. Should the seventh day fall on a Saturday, Sunday[,] or holiday, the last day for the hearing shall be the business day immediately following the weekend or holiday.
>
> (c) Inmates confined in Prehearing Disciplinary Housing shall receive a hearing within three calendar days of their placement in Prehearing Disciplinary Housing, including weekends and holidays, unless there are exceptional circumstances, unavoidable delays, or reasonable postponements. Should the third day fall on a Saturday, Sunday, or holiday, the hearing shall be held on the business day immediately following the weekend or holiday.
>
> [N.J.A.C. 10A:4-9.8(b), (c).]

Further, under N.J.A.C. 10A:4-9.9, a Hearing Officer "may, in its discretion, dismiss a disciplinary charge because of a violation of time limits." When making such a determination, the Hearing Officer may consider: "(1) [t]he length of the delay; (2) [t]he reason for the delay; (3) [p]rejudices to the inmate in preparing his/her defense; and (4) [t]he seriousness of the alleged infraction." N.J.A.C. 10A:4-9.9.

Here, the twenty-five-day delay resulted from appellant's request for an adjournment, not a failure by the DOC to "swiftly adjudicate" the charge. Moreover, the record shows appellant was placed in Prehearing Disciplinary Housing on October 29, 2018, and the original hearing date was scheduled to take place four days later on November 2, 2018.

We also reject appellant's argument that the Hearing Officer should have dismissed the charge due to the purported "extreme violation of time limits." The initial hearing violated N.J.A.C. 10A:4-9.8(c) by only one day. DOC's evidentiary submissions were dated no later than October 31, 2018, while appellant's submissions were dated as late as November 21, 2018. Therefore, we conclude the Hearing Officer properly declined to dismiss the disciplinary charge pursuant to N.J.A.C. 10A:4-9.9.

A-4258-18

For the first time on appeal, appellant contends the Hearing Officer violated her due process rights by barring live confrontation and cross-examination of Sergeant Applegate and Officer Stratton. She also argues the record is devoid of "input from the two [PBB] trainers who were within feet of [appellant] as the alleged incident occurred," testimony from the four corrections officers from her housing unit, documents detailing the successful placement of the two other puppies she raised, and a copy of the PBB handbook setting forth protocols for training and discipline.

Our Court has held "that [the] DOC must structure an informal hearing to 'assure that the [disciplinary] finding will be based on verified facts and that the exercise of discretion will be informed by accurate knowledge of the [inmate's] behavior'". McDonald, 139 N.J. at 196 (second and third alterations in original) (quoting Avant, 67 N.J. at 523). In other words, despite the relative informality of the hearing, the proceedings must be conducted in such a way that the hearing officer is able to determine the factual accuracy of the charges. Ibid. Therefore, a hearing officer must "make a good-faith effort to adjudicate charges fairly and impose appropriate sanctions." Ibid.

The administrative regulations continue to guide the analysis. Unlike in a criminal prosecution, a finding of guilt at a disciplinary hearing only requires

"substantial evidence that the inmate has committed a prohibited act."  N.J.A.C. 10A:4-9.15(a).  "Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion.  The term has also been defined as evidence furnishing a reasonable basis for the agency's action." Figueroa, 414 N.J. Super. at 192 (citations omitted).

Inmates are permitted to present evidence in the form of fact witnesses and documentation in their defense.  N.J.A.C. 10A:4-9.13(a).  However, a Hearing Officer may refuse to call a witness "whether it be for irrelevance, lack of necessity[,] or hazards presented in individual cases."  McDonald, 139 N.J. at 197 (quoting Avant, 67 N.J. at 531).  A Hearing Officer who refuses to call a witness must record the reasons for the refusal because "the record must show that prison officials observed mandatory procedural safeguards."  Ibid.

Similarly, an inmate who requests the opportunity for confrontation and cross-examination of witnesses or accusers shall be given that opportunity "in such instances where the . . . Hearing Officer . . . deems it necessary for an adequate presentation of the evidence . . . ."  N.J.A.C. 10A:4-9.14(a).  A Hearing Officer may refuse confrontation and cross-examination, N.J.A.C. 10A:4-9.14(a), but must provide written explanation for the denial.  McDonald, 139 N.J. at 198.  Our Court determined that "requiring . . . prison officials [to] record

reasons for not permitting an inmate to confront or cross-examine witnesses deters administrative arbitrariness," and "[f]urthermore, compliance with the requirement . . . permit[s] reviewing authorities to determine whether or not there had been a proper exercise of discretion." Ibid.

We have emphasized the significance of in[-]person confrontation and cross-examination in prison disciplinary proceedings. Jones v. Dept. of Corr., 359 N.J. Super. 70 (App. Div. 2003). Because "in-person confrontation and cross-examination have traditionally been regarded as the best way to test credibility," we concluded in Jones that "[a] proceeding in which the right of confrontation and cross-examination has been unduly curtailed, or the accused unreasonably limited in his access to witnesses in his favor, lacks both the form and substance of a fair hearing." Id. at 77-78.

Appellant here presented evidence in her defense, written statements from her witnesses, and confrontation questions posed to Sergeant Applegate. Moreover, a prison official emailed the PBB liaison to obtain witness statements from the trainers and was informed "neither one saw the incident" and "their only knowledge of the incident" was Sergeant Applegate's statement about what he observed. This email was part of the record reviewed by the Hearing Officer.

Although the record does not contain a statement explaining the Hearing Officer's refusal to permit in-person confrontation as required by N.J.A.C. 10A:4-9.13 and 9.14, the evidence was aptly summarized as follows:

> [Appellant] pled [not guilty] to charge. [Appellant] was afforded all rights and due process. [Appellant's] witness statements were detrimental to her plea. [Appellant's] confrontation corroborated the evidence provided. All evidence was thoroughly considered and does corroborate that [Appellant] was witnessed by [two] staff mistreating dog. [Appellant] was afforded polygraph request which was denied. All evidence supports charge. Charge upheld.

We decline to revisit the Court's holding in McDonald that neither New Jersey's fairness and rightness standard nor procedural due process mandates the creation of an audio or video record of a disciplinary hearing. 139 N.J. at 201-08. Because stare decisis "carries such persuasive force . . . a departure from precedent [must] be supported by some special justification." Luchejko v. City of Hoboken, 207 N.J. 191, 208 (2011) (quoting State v. Brown, 190 N.J. 144, 157 (2007)). One such special justification is "when experience teaches that a rule of law has not achieved its intended result." Pinto v. Spectrum Chems. & Lab. Prods., 200 N.J. 580, 598 (2010). We are unpersuaded by appellant's argument that advancements in technology since McDonald was decided provides the requisite justification to depart from principles of stare decisis.

III.

Next, appellant argues the disciplinary charge is unconstitutionally void on its face because the regulation fails to define or explain "abuse or cruelty." Again, we disagree.

"A fundamental element of due process is that a law 'must give fair notice of conduct that is forbidden or required.'" State v. Pomianek, 221 N.J. 66, 84 (2015) (quoting FCC v. Fox TV Stations, Inc., 567 U.S. 239, 253 (2012)). "A statute that criminalizes conduct 'in terms so vague that [persons] of common intelligence must necessarily guess at its meaning . . . violates the first essential of due process of law.'" Id. at 85 (alteration in original) (quoting Lanzetta v. New Jersey, 306 U.S. 451, 453 (1939)).

> The United States Supreme Court has defined the concept of void for vagueness in terms of whether a statute or regulation gives a person of ordinary intelligence fair warning of what conduct is prohibited . . . and whether it is specific enough to provide an explicit standard to guide its enforcement.
>
> [Pazden v. N.J. State Parole Bd., 374 N.J. Super. 356, 369 (App. Div. 2005).]

A party asserting a facial challenge to the constitutionality of a regulation under the void for vagueness doctrine "must establish that no set of circumstances exists under which the [regulation] would be valid . . . or that the

16

statute lacks any plainly legitimate sweep." State v. Borjas, 436 N.J. Super. 375, 396 (App. Div. 2014) (citations omitted). Notably, "[j]udicial review of a vagueness challenge is not 'a linguistic analysis conducted in a vacuum.'" Ibid. (quoting State v. Saunders, 302 N.J. Super. 509, 521 (App. Div. 1997)). Rather, such review "requires consideration of the questioned provision itself, related provisions, and the reality in which the provision is to be applied." Ibid. (quoting Saunders, 302 N.J. Super. at 521). Unless a regulation's framework explicitly states otherwise, "the words used in a statute carry their ordinary and well-understood meanings." State v. Mortimer, 135 N.J. 517, 532 (1994) (quoting State v. Afanador, 134 N.J. 162, 171 (1993)).

Appellant maintains that when "abuse" and "cruelty" are given their ordinary meaning, the striking of a puppy with the handle of a leash does not constitute conduct encompassed by those words. We disagree.

The challenged regulation categorizes *.008 abuse/cruelty to animals as the second most severe level of offense, warranting "a sanction of no less than 91 days and no more than 180 days of administrative segregation per incident and one or more of the sanctions listed at N.J.A.C. 10A:4-5.1(g). . . ." N.J.A.C. 10A:4-4.1(2). While N.J.A.C. 10A:4-4.1 does not provide a definition for *.008 abuse/cruelty to animals, the Prevention of Cruelty to Animals Act,

N.J.S.A.4:22-1 to 4:22-60, describes various acts which constitute cruelty to animals. Among those acts is "[i]nflict[ing] unnecessary cruelty upon a living animal or creature, by any direct or indirect means . . . ." N.J.A.C. 4:22-26(c).

We are satisfied that striking a puppy in the face with a leash handle easily satisfies this definition. Moreover, as a self-described veteran puppy-raiser with PBB, appellant was undoubtedly familiar with PBB's rules and regulations. As evidenced by the statement of the two PBB trainers present at the time of the incident, "[t]hey were confident from what was described [by Sergeant Applegate] that [appellant's actions were] not appropriate PBB training." Puppy-raisers were prohibited from striking the animals or otherwise inflicting unnecessary cruelty. Consequently, appellant had fair notice that striking Kali was prohibited behavior, and we reject her void for vagueness challenge. We are satisfied appellant received all due process protections to which she is entitled.

IV.

Appellant also challenges the sufficiency of the investigation arguing prison officials failed to obtain: (1) statements from PBB trainers; (2) the PBB training manual; (3) statements from "[c]ertain staff members"; (4) answers to

18

all confrontation questions posed to Sergeant Applegate; and (5) evidence of Kali's physical status following the alleged incident.

N.J.A.C. 10A:4-9.5 governs the investigation of an alleged disciplinary infraction and provides the investigation shall be conducted "within [forty-eight] hours of the time the disciplinary report is served upon the inmate." N.J.A.C. 10A:4-9.5(a). It also provides, in pertinent part:

> (e) The investigating officer shall thoroughly investigate the incident. As part of this investigation, the investigating officer shall verify that the inmate has received the written charge. The investigating officer shall also read the charge to the inmate, inform the inmate of the inmate's use immunity rights, take the inmate's plea, and ask if the inmate wishes to make a statement concerning the incident or infraction. The investigating officer shall take the inmate's statement concerning the incident. The investigating officer may talk to witnesses and the reporting staff member and summarize their statements as may be necessary. Comments about the inmate's attitude may be included in the investigatory report. The investigating officer shall attach to the investigatory report, evidence such as, but not limited to, staff reports, photographs of physical evidence, analysis of specimens collected, continuity of evidence forms and confiscation forms.
>
> (f) The inmate may submit to the investigating officer a written request for inmate witnesses. Written requests will be attached to the record of the case.
>
> [N.J.A.C. 10A:4-9.5(e), (f).]

A-4258-18

Applying these principles, we are satisfied that the prison officials involved complied with the requirements of N.J.A.C. 10A:4-9.5(e) and (f). The record demonstrates appellant requested additional time for confrontation and gathering of witness statements. Likewise, a prison official contacted the PBB liaison to obtain statements from the trainers but was informed they did not witness the incident.

We also have considered, and reject, appellant's argument that she was improperly denied the opportunity to take a polygraph examination. An inmate does not have the right to a polygraph test to contest a disciplinary charge. Johnson v. N.J. Dept' of Corr., 298 N.J. Super. 79, 83 (App. Div. 1997). "An inmate's request for a polygraph examination shall not be sufficient cause for granting the request." N.J.A.C. 10A:3-7.1(c). In fact, N.J.A.C. 10A:3-7.1(c) "is designed to prevent the routine administration of polygraphs, and a polygraph is clearly not required on every occasion that an inmate denies a disciplinary charge against him." Ramirez v. Dep't of Corr., 382 N.J. Super. 18, 23-24 (App. Div. 2005). A "prison administrator's determination not to give a prisoner a polygraph examination is discretionary and may be reversed only when that determination is 'arbitrary, capricious or unreasonable.'" Id. at 24. "[A]n inmate's right to a polygraph is conditional and the request should be granted

when there is a serious question of credibility and the denial of the examination would compromise the fundamental fairness of the disciplinary process." Id. at 20.

Here, the Administrator determined that issues of credibility can be decided by the Hearing Officer. Moreover, appellant has not pointed to any extrinsic evidence in the record that would involve credibility. We are satisfied the Administrator did not abuse her discretion by denying the request for a polygraph examination.

There was substantial credible evidence in the record to support the finding of guilt. In addition, the sanctions, as substantially lessened by the Superintendent, were commensurate with the severity of the infraction and authorized under N.J.A.C. 10A:4-5.1(a) for an asterisk offense. Asterisk offenses "are considered the most serious and result in the most severe sanction[.]" N.J.A.C. 10A:4-4.1(a).

We have reviewed appellant's remaining arguments and conclude they lack sufficient merit to warrant extended discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

21